**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FAT BOY'S PIZZA FRANCHISE, LLC, a Louisiana limited liability company; SAVVY SLIDERS FRANCHISE, LLC, a Michigan limited liability company; SAVVY SLIDERS COMPANY, LLC, a Michigan limited liability company; and DEEP SOUTH IP, LLC, a Louisiana limited liability company,

Plaintiffs,

Case No.

v.

FBP COVINGTON, LLC, a Louisiana limited liability company; FAT BOY'S PIZZA, LLC, a Louisiana limited liability company; FBP EXPRESS HARVEY, LLC, a Louisiana limited liability company; FBP BR1, LLC, a Louisiana limited liability company; FBP EXPRESS KENNER, LLC, a Louisiana limited liability company; FBP OF AMERICA, LLC, a Louisiana limited liability company; CORCHIANI INVESTMENTS, INC., a Louisiana corporation; and GABRIEL CORCHIANI, an individual,

Defendants.
________________________________________/

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs Fat Boy's Pizza Franchise, LLC ("Fat Boy's Franchise"), Savvy Sliders Franchise, LLC ("Savvy Sliders"), Savvy Sliders Company, LLC ("Savvy Sliders Company"), and Deep South IP, LLC ("Deep South") (together,

"Plaintiffs"), for their Verified Complaint against Defendants FBP Covington, LLC ("FBP Covington"), Fat Boy's Pizza, LLC ("FBP Metairie"), FBP Express Harvey, LLC ("FBP Harvey"), FBP BR1, LLC ("FBP BR1"), FBP Express Kenner, LLC ("FBP Kenner"), FBP of America, LLC ("FBP of America"), Corchiani Investments, Inc. ("Corchiani Investments"), and Gabriel Corchiani ("Corchiani") (together, "Defendants"), state:

## NATURE OF THE ACTION

1. Plaintiffs franchise the Fat Boy's Pizza and Savvy Sliders restaurant systems. Defendants are Plaintiffs' Louisiana franchisees and the entities and individuals who control them. Gabriel Corchiani founded Fat Boy's Pizza, sold the brand to Plaintiffs' side of this venture, completing his exit in April 2025, and stayed in the system as its largest franchisee. He is now taking the system apart one restaurant at a time.

2. On August 6, 2026, Defendants closed the co-branded Fat Boy's Pizza and Savvy Sliders restaurant in Covington, Louisiana without telling Plaintiffs. Plaintiffs learned of the closure from a catering platform, which reported that the store had cancelled a pending order because it was "Out of business." The next day a sign appeared on the restaurant door, printed on Fat Boy's Pizza letterhead and bearing the Fat Boy's Pizza design mark. It told customers that Defendants were "excited to warmly welcome Tommy's Pizza to this location" and that "[o]ur team

looks forward to welcoming you again soon under the Tommy's Pizza name." Tommy's Pizza is a competing pizza restaurant. Its website already advertises the Covington premises as its own second location, using the franchised restaurant's telephone number. Defendants never asked for Plaintiffs' consent, and Plaintiffs never gave it.

3. Plaintiffs terminated the Covington franchise agreements on August 7, 2026, exercised their contractual rights to take over the premises lease and to purchase the assets of the franchised business, and demanded that Defendants retract the handover. Defendants have done none of it. Plaintiffs' signs and trade dress are still on the building. Plaintiffs' equipment, in which Plaintiffs hold a perfected security interest, is still inside. Within two days of the termination notice, Plaintiffs' access to the restaurant's security cameras was cut off, and the last footage Plaintiffs saw showed the restaurant's arcade games being carried out. Asked to meet, Corchiani wrote back: "Covington is gone."

4. This cannot wait because the substitution is not finished. Tommy's Pizza has not opened. The signage, the trade dress, the equipment, and the restaurant can still be reopened as a system location. Once a competitor opens in that building, with the former general manager of the franchised business, the franchised restaurant's telephone number, and the customers Plaintiffs spent years developing at that address, the location is gone from the system and no award of damages

recreates it. Plaintiffs therefore ask first for a narrow temporary restraining order limited to Covington. Until Defendants can be heard, it would bar any further step toward the handover, any removal of the collateral, any use of Plaintiffs' marks for the successor, and any disturbance of the lease, and would require Defendants to preserve their records.

5. Covington is not an isolated event. Defendants closed the New Orleans French Quarter restaurant without notice and, on information and belief, let it pass to another pizza concept. They closed Kenner without notice in or around March 2026. Plaintiffs thereafter terminated the franchise, demanded the return of their equipment, and reserved their option to purchase the assets. On information and belief, Defendants also sold the Kenner business and its assets to a third party, although Plaintiffs do not yet know whether that sale occurred before or after termination. Weeks before the Covington closure, Defendants listed all three remaining franchised restaurants for "Sublease and/or Assignment" as turnkey opportunities, again without telling Plaintiffs. Those three agreements remain in force, and Plaintiffs ask the Court, on notice and after a hearing, to enjoin Defendants from closing, subleasing, assigning, or otherwise transferring them, before what remains of the system follows Covington, Kenner, and the French Quarter.

## PARTIES

6. Plaintiff Fat Boy's Pizza Franchise, LLC is a Louisiana limited liability company with its principal place of business at 30955 Northwestern Highway, Suite 300, Farmington Hills, Michigan. It is the franchisor of the Fat Boy's Pizza restaurant system.

7. Plaintiff Savvy Sliders Franchise, LLC is a Michigan limited liability company, formed on January 25, 2019, with its principal place of business at 30955 Northwestern Highway, Suite 300, Farmington Hills, Michigan. It is the franchisor of the Savvy Sliders restaurant system.

8. Plaintiff Savvy Sliders Company, LLC is a Michigan limited liability company with its principal place of business at 30955 Northwestern Highway, Suite 300, Farmington Hills, Michigan. It owns the federally registered SAVVY SLIDERS® trademark identified below and licenses it to Savvy Sliders.

9. Plaintiff Deep South IP, LLC is a Louisiana limited liability company with its principal place of business at 30955 Northwestern Highway, Suite 300, Farmington Hills, Michigan. It owns the federally registered FAT BOY'S PIZZA® trademarks identified below and licenses them to Fat Boy's Franchise.

10. Every member of each Plaintiff, at every level of ownership and whether an entity or a natural person, is a citizen of Michigan. No member of any

Plaintiff at any level is a citizen of Louisiana. Each Plaintiff is therefore a citizen of Michigan.

11. Defendant FBP Covington, LLC is a Louisiana limited liability company with its principal place of business at 69305 Highway 21, Unit 100, Covington, Louisiana 70433.

12. Defendant Fat Boy's Pizza, LLC is a Louisiana limited liability company with its principal place of business at 2565 Metairie Road, Suite 100, Metairie, Louisiana 70001.

13. Defendant FBP Express Harvey, LLC is a Louisiana limited liability company with its principal place of business at 1535 Lapalco Blvd., Harvey, Louisiana 70058.

14. Defendant FBP BR1, LLC is a Louisiana limited liability company with its principal place of business at 3624 Nicholson Drive, Bldg. 500, Unit 2, Baton Rouge, Louisiana 70802.

15. Defendant FBP Express Kenner, LLC is a Louisiana limited liability company with its principal place of business at 2201 Veterans Blvd., Kenner, Louisiana 70062.

16. Defendant FBP of America, LLC is a Louisiana limited liability company. It is the sole member of each of FBP Covington, FBP Metairie, FBP Harvey, FBP BR1, and FBP Kenner (together, the "Franchisee Defendants").

17. Defendant Corchiani Investments, Inc. is a Louisiana corporation with its principal place of business in Louisiana. It holds all of the Class A voting units of FBP of America and a ninety percent equity interest. The only other members of FBP of America hold non-voting units, their addresses of record are in Louisiana, and on information and belief they are citizens of Louisiana.

18. Defendant Gabriel Corchiani is an individual domiciled in Louisiana, is over the age of eighteen, and is otherwise sui juris. He owns and serves as President of Corchiani Investments and is the sole Manager and chief executive officer of FBP of America, which its operating agreement makes "exclusively responsible for the general management of the business of the Company." Corchiani controls each of the Franchisee Defendants.

19. Plaintiffs sue FBP of America, Corchiani Investments, and Corchiani for three reasons. Each of them signed or is bound by the Appendix B undertaking described below, which makes them jointly, severally, and personally bound by the non-monetary terms of the franchise agreements, including the confidentiality, non-competition, and non-solicitation covenants of Articles 11 and 12. Each participated in and benefited from the conduct alleged here. And Corchiani personally directed that conduct, including the closures, the purported transfers, the disposition of Plaintiffs' collateral, and the continued display of Plaintiffs' marks for a

competitor's benefit, which makes him personally liable for those acts without regard to any guaranty.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b) because this action arises in part under the Trademark Act of 1946, 15 U.S.C. § 1051 et seq., and joins related claims of unfair competition. The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

21. The Court also has jurisdiction under 28 U.S.C. § 1332. Complete diversity exists between Plaintiffs, whose members are citizens of Michigan as alleged above, and Defendants, whose members and shareholders are citizens of Louisiana, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

22. This Court has personal jurisdiction over Defendants, and venue is proper, because Defendants consented to both and waived any objection. See 28 U.S.C. § 1391(b), (c). Section 16.4 of each franchise agreement provides that any action by the franchisee against the franchisor must be brought exclusively, and any action by the franchisor may be brought, in "the federal district court covering the location at which Franchisor has its principal place of business at the time the action is commenced." The parties also "waive[d] all questions of personal jurisdiction or

venue for the purpose of carrying out this provision." Fat Boy's Franchise and Savvy Sliders each maintain their principal place of business in Farmington Hills, Michigan, in this District. The Fat Boy's Pizza agreements, executed when the franchisor's office was in Metairie, recite that its principal place of business was "currently Metairie, Louisiana," and they select Louisiana law; the Savvy Sliders agreements recite Farmington Hills and select Michigan law. Section 16.4 fixes venue by reference to the franchisor's principal place of business at the time the action is commenced, which is Farmington Hills, Michigan.

23. Defendants negotiated for and entered into these agreements knowing they would benefit from their affiliation with two franchise systems that are owned, managed, and administered from Plaintiffs' Michigan headquarters. They availed themselves of Michigan law by contracting with Michigan-based franchisors, remitting payments and reports to Michigan, and agreeing to resolve disputes in Michigan courts.

## FACTUAL ALLEGATIONS

### A. The Fat Boy's Pizza and Savvy Sliders Restaurant Systems

24. Corchiani founded Fat Boy's Pizza in the greater New Orleans area, and the brand opened its first restaurants there beginning in 2020. Southeast Louisiana is the brand's home market. Fat Boy's Pizza restaurants have operated in Metairie, Kenner, Harvey, Covington, Baton Rouge, and the New Orleans French Quarter, and at locations in Texas and Mississippi.

25. A Fat Boy's Pizza restaurant is a fast-casual, sports-themed restaurant built around over-sized pizza pies and slices, sold under the registered "SIZE MATTERS" tagline, together with chicken wings, premium daiquiris, draft beer, soft drinks, and related items for carry-out, dine-in, catering, and delivery. The system supplies its franchisees with proprietary recipes, spice and sauce formulations, equipment specifications, trade dress, operating standards, training, and advertising programs.

26. Savvy Sliders is a separate fast-casual system that sells sliders, chicken wings, chicken tenders, fries, and related products. Savvy Sliders began franchising in 2019 and had grown to forty-two franchised restaurants in seven states, including Louisiana, as of December 31, 2025.

27. At approved locations, the two systems permit a franchisee to operate a single restaurant co-branded under both brands, offering products from both systems. A co-branded restaurant operates under two franchise agreements, one with each franchisor. The Covington, Metairie, and Harvey restaurants were co-branded. The Kenner and Baton Rouge restaurants operated under the Fat Boy's Pizza brand alone.

28. Both systems are owned, managed, and administered from Plaintiffs' headquarters in Farmington Hills, Michigan.

**B. The Marks**

29. Deep South owns the registrations for the principal trademarks of the Fat Boy's Pizza system, each registered on the Principal Register of the United States Patent and Trademark Office: FAT BOY'S PIZZA, U.S. Reg. No. 6,114,259 (registered July 28, 2020); FAT BOY'S PIZZA "SIZE MATTERS" and design, U.S. Reg. No. 6,114,260 (registered July 28, 2020); and MORE TO LOVE, U.S. Reg. No. 6,654,870 (registered February 22, 2022) (the "Fat Boy's Marks"). Deep South licenses the Fat Boy's Marks to Fat Boy's Franchise under a written license dated May 7, 2024, and retains control over the nature and quality of the goods and services offered under them.

30. Savvy Sliders Company owns the registration for SAVVY SLIDERS, U.S. Reg. No. 5,871,501 (registered October 1, 2019) (the "Savvy Sliders Mark," and with the Fat Boy's Marks, the "Marks"), and licenses it to Savvy Sliders under a written license dated June 16, 2019.

31. Each of the four registrations identified above is valid, subsisting, and unrevoked, and each is prima facie evidence of the validity of the mark and of the owner's exclusive right to use it in commerce. 15 U.S.C. § 1057(b).

32. Each license from Deep South to Fat Boy's Franchise and from Savvy Sliders Company to Savvy Sliders is exclusive as to the franchising of restaurants under the licensed marks, and each licensee holds the right to enforce the licensed marks against infringers. A franchisee, by contrast, receives only a limited, non-

exclusive sublicense to use the Marks. It may use them to operate an approved restaurant, in the manner the franchisor prescribes, and only while its franchise agreement remains in effect. No franchisee has any right to use the Marks after termination, and no one has ever been authorized to display the Marks at the Covington premises for the benefit of another restaurant concept.

### C. Plaintiffs Bought the Fat Boy's Brand and Corchiani Stayed On as a Franchisee

33. Under a Master Agreement dated May 7, 2024, Corchiani and his entities began the sale of the Fat Boy's Pizza brand to Plaintiffs' side of the venture. All of the Fat Boy's Pizza intellectual property was transferred to Deep South, then owned jointly by Corchiani Investments and an affiliate of Plaintiffs. Fat Boy's Pizza Franchise, LLC was formed as the franchisor of Fat Boy's Pizza restaurants. Plaintiffs' affiliate agreed to invest $2,000,000 toward converting five existing Fat Boy's Pizza restaurants into co-branded Fat Boy's Pizza and Savvy Sliders restaurants. In exchange, the Corchiani entities agreed to remain in the system as franchisees, to co-brand five existing restaurants, and to develop four more.

34. Corchiani did not perform a number of those obligations. On April 1, 2025, the parties signed a First Amendment to the Master Agreement, which each Franchisee Defendant executed. Under it, Corchiani agreed to complete the co-branding of the Metairie, Covington, and Harvey restaurants, to open the Harvey co-branded restaurant by May 31, 2025, and to sign new franchise agreements for seven

locations, including Harvey, Metairie, Covington, Baton Rouge, Kenner, and the French Quarter. As to the Harvey agreement, the Amendment provided that it would be delivered "on the same terms and conditions as appearing in the Metairie, LA and Covington, LA franchise agreements," and the Amendment confirmed generally that "[t]he parties will continue to perform its respective obligations under existing franchise agreements." Plaintiffs assert no claim arising out of conduct before April 1, 2025.

35. Corchiani and Corchiani Investments also relinquished every direct and indirect ownership interest they held in Deep South and in the entities that own Fat Boy's Franchise. Since April 1, 2025, Plaintiffs' side of the venture has owned the Fat Boy's Pizza brand, the Fat Boy's Marks, and the franchisor entities outright, and Corchiani's only remaining role in the system has been that of a franchisee.

## D. The Franchise Agreements

### *(i) Covington*

36. FBP Covington signed two franchise agreements for a co-branded restaurant at 69305 Highway 21, Unit 100, Covington, Louisiana 70433 (the "Covington Location"): a Fat Boy's Pizza franchise agreement with Fat Boy's Franchise effective June 1, 2024, and a Savvy Sliders franchise agreement with Savvy Sliders dated September 12, 2024 (together, the "Covington Franchise Agreements"). True and correct copies of the Covington Fat Boy's and Savvy Sliders Franchise Agreements are attached hereto as **Exhibits A** and **B**, respectively.

Appendix B to the Fat Boy's Pizza agreement recites the franchised restaurant's address and its business telephone number, (985) 348-2182.

37. FBP of America, as the sole member of FBP Covington, signed each of the Covington Franchise Agreements through Corchiani Investments, acting through Corchiani as its President. The members of FBP of America signed as well.

***(ii) Metairie***

38. FBP Metairie operates a co-branded restaurant at 2565 Metairie Road, Metairie, Louisiana 70001 (the "Metairie Location") under a Fat Boy's Pizza franchise agreement effective June 1, 2024 and a Savvy Sliders franchise agreement dated May 31, 2024 (together, the "Metairie Franchise Agreements"), on the same forms and materially identical terms as the Covington Franchise Agreements. A Co-Brand Addendum governs the Savvy Sliders co-branding at that restaurant.

***(iii) Harvey***

39. FBP Harvey operates a co-branded restaurant at 1535 Lapalco Blvd., Harvey, Louisiana 70058 (the "Harvey Location") under a Fat Boy's Pizza franchise agreement effective June 1, 2024 and a Savvy Sliders franchise agreement executed on or about April 4, 2025 (together, the "Harvey Franchise Agreements"), on the same forms and materially identical terms.

***(iv) Baton Rouge***

40. FBP BR1 operates a Fat Boy's Pizza restaurant at 3624 Nicholson Drive, Bldg. 500, Baton Rouge, Louisiana 70802 (the "Baton Rouge Location")

under a Fat Boy's Pizza franchise agreement effective June 1, 2024 (the "Baton Rouge Franchise Agreement"), on the same form and materially identical terms.

***(v) Kenner***

41. FBP Kenner operated a Fat Boy's Pizza restaurant at 2201 Veterans Blvd., Kenner, Louisiana 70062 (the "Kenner Location") under a Fat Boy's Pizza franchise agreement effective June 1, 2024 (the "Kenner Franchise Agreement"), on the same form and materially identical terms, until Plaintiffs terminated that agreement for abandonment as alleged below.

***(vi) The term of each agreement***

42. Section 3.1 of every one of these agreements is identical. It provides that the agreement "will begin on the date of this Agreement and continue until the date that is five years from the date of opening of the Franchise Business unless sooner terminated as provided in this Agreement." Section 3.2 gives the franchisee, on stated conditions, two additional five-year renewal terms.

43. Consistent with that provision, the Kenner Termination Notice states that under "Section 3.1 of the Franchise Agreement, the term of the franchise was five (5) years, through June 1, 2029." A true and correct copy of the Kenner Termination Notice is attached hereto as **Exhibit C**. The same is true of each of the other agreements effective June 1, 2024.

44. In the First Amendment to the Master Agreement, signed April 1, 2025, the parties confirmed that they "will continue to perform [their] respective obligations under existing franchise agreements," and each Franchisee Defendant continued to operate under its agreement thereafter. A true and correct copy of the First Amendment to the Mast Agreement ("First Amendment to Master") is attached hereto as **Exhibit D**.

45. The Metairie Franchise Agreements, the Harvey Franchise Agreements, and the Baton Rouge Franchise Agreement remain in full force and effect. All of the agreements identified in this section are referred to together as the "Franchise Agreements," and the premises of each franchised restaurant are referred to as a "Franchise Location," the term the Franchise Agreements use.

### E. The Covenants Defendants Agreed To

46. The Franchise Agreements contain materially identical protections for the franchise systems, in identically numbered sections. The provisions relevant to this action are set forth below.

#### *(i) Defendants agreed to operate each restaurant continuously, and abandonment is a default that cannot be cured*

47. Section 8.1 requires the franchisee to "continually operate the Franchise Business after opening . . . throughout the term of this Agreement," to use its best efforts to promote and maximize sales, and to maintain at all times sufficient

equipment, supplies, and personnel to operate the restaurant "at optimal capacity and efficiency as specified by Franchisor."

48. Section 14.3(h) makes "[a]ny abandonment by Franchisee of the Franchise Business" a default and good cause for termination with no opportunity to cure. Abandonment "will be conclusively presumed if Franchisee fails to open the Franchise Business for business . . . for a period of two (2) consecutive business days without the prior written consent of Franchisor." Section 14.5(a) permits termination for such a default "effective on delivery of written notice to Franchisee."

49. Section 14.4(q) makes it a default under each Franchise Agreement for there to be "[a]ny other material breach by Franchisee or any of the owners of Franchisee or any corporation, partnership, limited liability company or other entity controlling, controlled by or under common control with Franchisee or any of the owners of Franchisee, of any of the terms of this Agreement or any other agreement entered into with Franchisor or its affiliates, including, but not limited to, breach of covenants of confidentiality, restrictions on competition or personal guaranties." Section 14.5(b) permits termination for such a default on at least thirty days' written notice, and only if the default is not completely cured within that period. Because a single ownership group controls every Franchisee Defendant, a material breach at one restaurant is a default at all of them.

### *(ii) Defendants agreed not to transfer a restaurant without Plaintiffs' consent, and gave Plaintiffs the first right to buy it*

50. Section 13.1 bars the franchisee and its owners from, "without Franchisor's prior written consent, directly or indirectly or contingently, whether voluntarily or by operation of law, sell[ing], assign[ing], transfer[ring], convey[ing], giv[ing] away, pledg[ing], mortgag[ing] or otherwise encumber[ing] any interest in: (a) this Agreement; (b) the Franchise Business or any of the assets of the Franchise Business; (c) the Franchise Location; or (d) . . . any equity or voting interest in Franchisee." It further provides that "[a]ny attempted Transfer not in accordance with this Agreement will have no effect and will constitute a breach of this Agreement."

51. Section 13.2 gives the franchisor a right of first refusal. A franchisee that receives and wishes to accept a bona fide offer for any interest described in Section 13.1 must deliver a detailed offer notice to the franchisor within ten days of receiving the offer (an "Offer Notice"). The franchisor then has thirty days to buy on the offered terms. No franchisee has ever delivered an Offer Notice to any Plaintiff, for any location, at any time, and no franchisee has ever requested Plaintiffs' consent to a transfer under Section 13.1.

### *(iii) Defendants agreed not to touch the leases, and gave Plaintiffs the right to take over each lease on termination*

52. Section 7.3 provides that, "[e]xcept in accordance with this Agreement, Franchisee must not assign its lease or let or sublet the Franchise Location or any portion of the Franchise Location without the prior written consent of Franchisor." The same section bars the franchisee from terminating, renewing, or altering the lease without the franchisor's written consent.

53. Section 15.2 then gives the franchisor the right to take the premises. If the agreement terminates for any reason other than a termination by the franchisee for cause, "Franchisor will have the right to assume Franchisee's lease for the Franchise Location," exercisable within ninety days of expiration or termination. The franchisee "must cooperate fully and use its best efforts to acquire the landlord's approval of the assignment of the lease to Franchisor, if necessary." The obligation to cooperate runs against the franchisee, and it survives termination.

***(iv) Defendants agreed not to compete, not to divert Plaintiffs' customers or employees***

54. Section 12.1 bars the franchisee and its owners, officers, members, and affiliates from engaging in or assisting any competing business during the term of the agreement. Section 12.2 imposes restrictions on competition for a period after termination, which the agreements state as three years.

55. Section 1.3 of the Fat Boy's Pizza agreements identifies the franchisor's "primary concept" as "the prototypical Fat Boy's Pizza restaurant," a "fast-casual

sports-themed restaurant[] featuring over-sized pizza pies and slices, chicken wings, premium daiquiris, draft beer, soft drinks and related items," and calls a restaurant operated under the system and its marks a "Restaurant." Section 12.4(a) then defines a "Competing Business" as "any business that is the same or similar to a Restaurant, including but not limited to a business that sells sliders or other sandwiches for carry-out, dine-in, catering or delivery or other products that may be offered by Restaurants now or in the future." A pizza restaurant that sells over-sized pizza and chicken wings is not similar to a Restaurant. It is one. Tommy's Pizza sells pizza, chicken wings, and related products, so it is a Competing Business under the Fat Boy's Pizza agreement. It is also a Competing Business under the Savvy Sliders agreement, which uses the same definition, because the Covington restaurant sold the products of both systems and Tommy's Pizza sells the same core products those systems sell.

56. Section 12.3 bars the franchisee and its shareholders, officers, directors, partners, owners, investors, and affiliates, during the term and for three years afterward, from "divert[ing] or attempt[ing] to divert any business or customer of the Franchise Business . . . to any Competing Business by direct or indirect inducements or otherwise." In the Fat Boy's Pizza agreements, Section 12.3 also bars them from "employ[ing] or seek[ing] to employ any person who was, at the time, employed by Franchisor or its affiliates or by another Restaurant," and from

"directly or indirectly induc[ing] any person to leave their employment with Franchisor or its affiliates or with another Restaurant."

57. Article 11 requires the franchisee, its owners, and its affiliates to keep the franchisor's confidential and proprietary information confidential and to use it only to operate the franchised restaurant.

58. Appendix B to each Franchise Agreement binds every "Interested Party," defined as anyone "directly or indirectly beneficially interested in the Franchise Business as a shareholder, officer, director, partner, member, owner, investor, Family Member and/or affiliate of Franchisee." Each Interested Party agrees to be "jointly, severally and personally bound by all the terms and provisions of the Franchise Agreement, other than those requiring the payment of money by Franchisee, to the same extent and in the same manner as Franchisee is bound, including but not limited to the confidentiality covenants, the non-competition covenants, the non-solicitation covenants, and all other restrictive covenants set forth in Articles 11 and 12 of the Franchise Agreement."

59. FBP of America signed Appendix B to each of the Covington Franchise Agreements, and Corchiani Investments signed Appendix B to the Covington Fat Boy's Pizza agreement, in each case acting through Corchiani. Corchiani signed Appendix B to the Covington Savvy Sliders agreement under his own name. Each of FBP of America, Corchiani Investments, and Corchiani is identified as an

Interested Party in each Appendix B, Corchiani by virtue of his complete ownership of Corchiani Investments. The same three Defendants signed or are identified as Interested Parties in Appendix B to each of the other Franchise Agreements. Each of them is therefore personally bound by the covenants of Articles 11 and 12, including the covenants against competition and against diverting Plaintiffs' customers and employees. *See* Ex. A, App. B.

***(v) Defendants granted Plaintiffs a security interest in each restaurant's assets and Plaintiffs perfected the security interest***

60. Section 4.17 grants the franchisor "a continuing security interest in all the assets of Franchisee and the Franchise Business," including all goods, inventory, equipment and accessions, accounts, chattel paper, deposit accounts, general intangibles, and all proceeds and products (the "Collateral"). The security interest secures all indebtedness of the franchisee and its affiliates to the franchisor and its affiliates, and the section irrevocably authorizes the franchisor to file financing statements covering the Collateral. Sections 4.15 and 4.16 separately give the franchisor the right, at all reasonable times, to enter and inspect the franchised restaurant and to examine, copy, and audit the franchisee's books and records.

61. Plaintiffs exercised that authorization and filed UCC-1 financing statements in Louisiana against each Franchisee Defendant, covering all assets of each franchisee and its franchised business. True and correct copies are attached as **Composite Exhibit E**. Plaintiffs' security interests are perfected of record, and they

continue in the Collateral notwithstanding any sale, transfer, or other disposition made without Plaintiffs' consent.

#### *(vi) Defendants agreed that Plaintiffs may enforce these covenants by injunction*

62. In Section 16.5 of each Franchise Agreement the franchisee agreed that the franchisor "will have the right, without the posting of any bond or security and without the need to prove irreparable injury, to obtain specific enforcement of the terms of this Agreement." The franchisee also acknowledged that certain acts "would cause irreparable harm to Franchisor," among them "transferring or assigning this Agreement or the assets of the Franchise Business without complying with this Agreement," "engaging in operations in violation of the in-term and post-term restrictions on competition set forth in Article 12," and "significantly impairing the goodwill associated with Franchisor."

63. The franchisee further agreed that its "sole remedy, in the event of entry of an injunction, will be the dissolution of the injunction, if warranted, after notice and a hearing," and that "all claims for damages by reason of the wrongful issuance of any injunction are being expressly waived." Section 16.6 entitles the franchisor, if it prevails, to its attorneys' fees, court costs, and expenses of enforcement.

### F. Defendants Abandoned the Covington Location, Delivered It to a Competitor, and Ignored Their Contractual Obligations

64. On or about August 6, 2026, FBP Covington stopped operating the restaurant at the Covington Location. It gave Plaintiffs no notice and asked for no consent. Plaintiffs learned of the closure secondhand, when a catering platform sent their field operations coach an automated notice that a pending order had been "Canceled by: Store" for the stated reason "Out of business."

65. The next day, August 7, 2026, a sign appeared on the restaurant door. Printed on Fat Boy's Pizza letterhead and bearing the FAT BOY'S PIZZA "SIZE MATTERS" design mark, U.S. Reg. No. 6,114,260, it used Plaintiffs' own mark to welcome a competitor into the franchised premises. "As we close this chapter, we are excited to warmly welcome Tommy's Pizza to this location." The sign told the restaurant's customers that Tommy's Pizza "has proudly served the Hammond community for over 50 years," assured them that "[o]ur team looks forward to welcoming you again soon under the Tommy's Pizza name," invited them to "continue making wonderful memories here for many years to come," and closed, "See You Soon at Tommy's Pizza!"

66. Tommy's Pizza is a competing pizza restaurant and bar that operates in Hammond, Louisiana, as "Tommy's on Thomas." Its website already advertises the Covington Location as one of its two locations. The listing gives the address as "69305 Hwy 21, Suite 100, Covington, LA 70433," offers online ordering, and uses the franchised restaurant's own business telephone number, (985) 348-2182, the

number recited in the Covington Fat Boy's Pizza franchise agreement. *See* Ex. A, App. B.

67. When Plaintiffs' representative visited the Covington Location on August 7, 2026, the restaurant was closed. Everything else was still there. The furniture, fixtures, equipment, and inventory remained inside, and Plaintiffs' signage and trade dress remained in place, inside and out. No successor restaurant had opened. That remained true through August 9, 2026, when Plaintiffs last had camera access, and Plaintiffs' exterior signage was still in place when their representative drove past thereafter.

68. The furniture, fixtures, equipment, and inventory inside the Covington Location are Plaintiffs' Collateral under Section 4.17, and Plaintiffs' security interest in them is perfected of record. *See* Comp. Ex. E. They are also what would allow Plaintiffs, or a replacement operator Plaintiffs approve, to reopen the restaurant as a system location. The agreements identify some of that equipment as the franchisor's own and require the franchisee to return it on termination under Section 15.1(c), including the point-of-sale system software, mixer, ovens, smoker, and preparation table. By closing the restaurant and announcing that Tommy's Pizza would take over the location, Defendants purported to deliver the premises and everything in them to a competitor. They did so without Plaintiffs' consent, without any accounting, and without any payment on the obligations the Collateral secures.

69. Defendants' dismantling of the restaurant is already under way. On or about August 9, 2026, Defendants, on information and belief, cut off Plaintiffs' access to the restaurant's security cameras — access Plaintiffs' operations team had used throughout the franchise relationship. In the last footage Plaintiffs viewed before the cutoff, individuals at the premises were removing the restaurant's arcade games. Tommy's Pizza has also retained the Covington restaurant's general manager, Will Eberlin, to manage its planned restaurant at the same premises, the same "team" the door sign told customers would serve them under the Tommy's Pizza name, contrary to the non-diversion and employee covenants of Section 12.3 that bind Defendants.

70. In closing the restaurant and purporting to hand its premises, business, and assets to Tommy's Pizza without Plaintiffs' written consent, FBP Covington breached the Covington Franchise Agreements four ways. It abandoned the franchised business under Sections 8.1 and 14.3(h). It made or attempted a transfer that Sections 13.1 and 7.3 prohibit and that Section 13.1 declares to be of no effect. It deprived Plaintiffs of the right of first refusal Section 13.2 gives them. And it placed Plaintiffs' Collateral in a competitor's hands contrary to Section 4.17.

71. On August 7, 2026, counsel for Fat Boy's Franchise and Savvy Sliders sent FBP Covington a Notice of Default and Termination (the "Covington Termination Notice," attached hereto as **Exhibit F**). The notice terminated the

Covington Franchise Agreements for abandonment under Sections 14.3(h) and 14.5(a), effective on delivery and in any event no later than August 9, 2026, under the deemed-delivery provisions of Section 19.5. It did not stop there. In the same notice Plaintiffs exercised their right to take over the restaurant's lease, elected to exercise their option to buy the assets of the franchised business, elected to enforce their security interest in those assets, demanded the return of their own equipment, and demanded that FBP Covington retract the handover in writing.

72. The Covington Termination Notice was sent by electronic mail and Federal Express. It was addressed to FBP Covington, Attention Gabriel Corchiani, Manager, at the Covington Location — the address the Covington Franchise Agreements designate for notices to the franchisee — and to FBP Covington care of Corchiani at 2565 Metairie Road, Metairie, Louisiana, the address of the Metairie Location. It was e-mailed to Corchiani at gabe@eatfatboyspizza.com, an address on the Fat Boy's Pizza domain that the Covington Fat Boy's Pizza agreement recites as the franchised restaurant's website, and a copy was sent to counsel.

73. The Covington Termination Notice demanded the following. It exercised Plaintiffs' right under Section 15.2 to assume the lease for the Covington Location and demanded that FBP Covington "cooperate fully and use its best efforts to acquire the landlord's approval of the assignment of the lease to Franchisor." It exercised Plaintiffs' option under Section 15.3 to purchase the assets of the

franchised business "in accordance with the terms of that provision," and directed FBP Covington "to preserve all such assets and not to sell, transfer, remove, encumber, or otherwise dispose of them pending completion of Franchisor's purchase." It confirmed Plaintiffs' election to enforce their continuing security interest under Section 4.17 in "all the assets of Franchisee and the Franchise Business." It demanded that FBP Covington perform each of its post-termination obligations under Article 15, including "returning to Franchisor all products and equipment proprietary to Franchisor, including the POS System software, mixer, ovens, smoker, and preparation table." And it directed FBP Covington to "take all actions necessary to unwind" any purported transfer of the lease, the premises, or the assets, "including by immediately retracting, in writing, any purported surrender or handover of the premises or its contents," because Section 13.1 makes any such transfer of no effect.

74. FBP Covington complied with none of it. It issued no retraction. It did not cooperate in any assignment of the Covington lease, and it has taken no step to obtain the landlord's approval. It did not deliver or account for the assets of the franchised business, and it did not preserve them. It did not return a single piece of Plaintiffs' proprietary equipment. It did not de-identify the premises, and Plaintiffs' signage and trade dress are still on the building. It did not pay the amounts that termination accelerated under Section 15.1(g). Within two days of the notice,

Plaintiffs' camera access was cut off and the restaurant's arcade games were carried out of the building.

75. Defendants' answer came on August 9, 2026. Corchiani wrote to Plaintiffs' principal, Happy Asker, who had asked to meet and attempt to resolve the matter. Corchiani's message read, "Covington is gone." A true and correct copy of the August 9, 2026, Text is attached hereto as **Exhibit G**.

76. Plaintiffs' signage, trade dress, and Marks remain on and inside the Covington Location today, while a competing restaurant prepares to open in the same building. The public is invited, in Defendants' own words, to return "under the Tommy's Pizza name" to be served by the same "team" at the same address.

77. Section 15.1 requires the franchisee, on termination or expiration for any reason, to immediately and permanently stop using the Marks and the franchise systems; to remove and deliver to the franchisor all signage and materials bearing the Marks and to alter the premises so they no longer look like a system restaurant; and to remove and return the franchisor's proprietary equipment, including the point-of-sale system software, mixer, ovens, smoker, and preparation table. Section 15.1 further requires the franchisee to stop using and, on request, to assign to the franchisor the restaurant's telephone numbers, websites, domain names, and other electronic identifiers, and to pay immediately all sums owed to the franchisor and its affiliates, which Section 15.1(g) accelerates automatically on termination.

78. Section 15.2 gives the franchisor the right to assume the franchisee's lease for the Franchise Location, exercisable within ninety days of termination, and obliges the franchisee to "cooperate fully and use its best efforts to acquire the landlord's approval of the assignment of the lease to Franchisor, if necessary." Section 15.3 gives the franchisor an option to purchase the assets of the franchised business, at a price the section directs the parties to fix. Section 15.5 entitles the franchisor to stipulated damages for its loss of bargain when an agreement is terminated before its term expires, and provides that those damages "do not give Franchisor an adequate remedy at law for any default under, or for the enforcement of, any other provision of this Agreement." Section 12.2 imposes post-term restrictions on competition. Defendants have complied with none of these obligations.

### G. Defendants' Prior Abandonment of Franchised Locations and Refusal to Comply with Their Contractual Obligations

79. Covington was not the first restaurant Defendants disposed of without telling Plaintiffs. Kenner came first, and it shows what Defendants do with a termination notice when left to their own devices.

80. In or about March 2026, Corchiani abruptly closed the Kenner Location, again without prior notice to Plaintiffs. By notice dated March 27, 2026, Fat Boy's Franchise terminated the Kenner Franchise Agreement for abandonment

under Section 14.3(h), effective on delivery and in any event no later than March 30, 2026, under the deemed-delivery provisions of Section 19.5. *See* Ex. C.

81. The Kenner Termination Notice demanded that FBP Kenner perform its post-termination obligations under Article 15, including that it "immediately de-identify[] the Franchised Business," "remove and deliver to Franchisor all sign faces, advertising material, and other materials bearing the Franchise Marks," and "remove and return to Franchisor the products and equipment proprietary to Franchisor, including the POS system, mixer, ovens, smoker and preparation table." It reserved Plaintiffs' right to exercise their option to purchase "certain assets of the Franchised Business, pursuant to Section 15.3." *See* Ex. C.

82. FBP Kenner ignored the notice. It did not de-identify the premises, deliver any signage or materials bearing the Marks, return Plaintiffs' equipment, account for the assets, or pay the amounts accelerated upon termination. On information and belief, Corchiani also purported to sell the Kenner business and its assets to another entity. Plaintiffs do not yet know whether that purported sale occurred before or after termination, but FBP Kenner never disclosed the transaction, returned Plaintiffs' equipment, or accounted for the assets despite Plaintiffs' termination notice, demand for return of their equipment, and reservation of their option to purchase the assets. It was made without Plaintiffs' consent, without any Offer Notice, and in the face of Plaintiffs' perfected security interest in

the same assets. No Defendant has ever accounted to Plaintiffs for the Kenner assets or their proceeds, or delivered any of those assets to Plaintiffs. Plaintiffs seek possession of the Collateral of the Kenner franchised business in this action, as Louisiana law requires them to do through judicial process. La. R.S. 10:9-609.

83. Corchiani did the same in the French Quarter of New Orleans, closing the Fat Boy's Pizza restaurant there without notice to or the consent of Plaintiffs and, on information and belief, selling or transferring it to another pizza concept. Plaintiffs again learned of the closure only after the fact.

### H. The Last Three Restaurants Are on the Market

84. Defendants have now closed or disposed of the French Quarter, Kenner, and Covington restaurants. Three franchised restaurants remain, in Metairie, Harvey, and Baton Rouge. Every one of them is on the market, and Plaintiffs found out only by accident.

85. On July 13, 2026, the Metairie Location was listed on the Louisiana Commercial Database ("LACDB"), a commercial real estate listing service, as a "Sublease and/or Assignment – Turnkey Restaurant Opportunity." The listing described an "[e]xceptional opportunity to sublease and/or assume an existing lease for a fully built-out restaurant at 2565 Metairie Road, subject to landlord approval," "ready for immediate occupancy, allowing a new operator to open with minimal startup time and build-out costs," and the listing's photographs show the restaurant

open and operating under Plaintiffs' Marks. A true and correct copy of the Metairie Listing is attached hereto as **Exhibit H**.

86. On July 21, 2026, the Harvey Location was listed the same way, as a "Sublease and/or Assignment – Turnkey Drive Thru-Restaurant Opportunity," offering an "[e]xceptional opportunity to sublease and/or assume an existing lease for a fully built-out NEWLY RENOVATED restaurant at 1535 Lapalco Blvd, subject to landlord approval," again "ready for immediate occupancy, allowing a new operator to open with minimal startup time and build-out costs." A true and correct copy of the Harvey Listing is attached hereto as **Exhibit I**.

87. On July 23, 2026, the Baton Rouge Location followed, listed on LACDB as a "Pre-Existing Restaurant Sublease on LSU Campus" in nearly identical language, with photographs bearing Plaintiffs' Marks. A true and correct copy of the Baton Rouge Listing is attached hereto as **Exhibit J**.

88. These are not offers to sell franchised businesses to approved franchisees. A sale within the system would require Plaintiffs' consent and Plaintiffs' approval of the buyer under Article 13. These listings offer exactly what the Franchise Agreements forbid the franchisees to deliver. They offer a turnkey handover of the premises, the leasehold, and the furniture, fixtures, equipment, and inventory of a franchised restaurant, to a new operator outside the franchise systems, with no notice to Plaintiffs and no chance for Plaintiffs to exercise the right of first

refusal. The assets offered are encumbered by Plaintiffs' perfected security interests, and the franchisees cannot convey them free of those interests.

89. Plaintiffs were never told of any listing. They discovered all three independently on August 7, 2026, the day after Covington closed. Plaintiffs have never consented to the marketing, sublease, or assignment of any Franchise Location, and no franchisee has ever delivered an Offer Notice.

90. The Metairie, Harvey, and Baton Rouge Franchise Agreements remain in effect, and every in-term covenant in them, including Sections 8.1, 12.1, 13.1, and 13.2, is fully operative today.

**I. Plaintiffs Face Irreparable Harm**

91. Plaintiffs have suffered and continue to suffer money damages, including lost royalties, lost advertising contributions, and other amounts due under the Franchise Agreements. Those losses are recoverable at judgment. The harm that is not recoverable is the loss of the locations themselves, the customers developed at them, the control Plaintiffs must exercise over restaurants bearing their Marks, and the integrity of two franchise systems whose covenants Defendants have shown they will disregard.

92. The Covington harm can still be prevented. Tommy's Pizza has not yet opened and Plaintiffs' signage and trade dress are still displayed. The Collateral is still on the premises. Absent immediate relief, Plaintiffs will lose the site, the

customer base built there, and any practical ability to place a replacement franchisee at or near that location.

93. The same loss now threatens Metairie, Harvey, and Baton Rouge. The same owner controls all three, and all three are listed for assignment or sublease. Defendants have twice shown what comes next. At Kenner they purported to sell the business and its assets out from under Plaintiffs' termination. At Covington they promised the premises to a competitor and started moving the equipment out. Unless restrained, Defendants will complete the Covington handover, consummate the marketed transfers, and continue to withhold the Covington assets and lease from Plaintiffs.

## COUNT I — BREACH OF THE COVINGTON FRANCHISE AGREEMENTS

**(Fat Boy's Franchise and Savvy Sliders against FBP Covington)**

94. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

95. The Covington Franchise Agreements are valid and enforceable contracts between FBP Covington, on the one hand, and Fat Boy's Franchise and Savvy Sliders, respectively, on the other. Fat Boy's Franchise and Savvy Sliders performed their obligations under them.

96. FBP Covington materially breached the Covington Franchise Agreements by abandoning the franchised business (§§ 8.1, 14.3(h)); by making or attempting to transfer the franchised business, its assets, and the Franchise Location

to Tommy's Pizza without consent (§§ 13.1, 7.3); and by depriving Plaintiffs of their right of first refusal (§ 13.2).

97. After termination, FBP Covington breached the agreements again by refusing to de-identify the premises or stop using the Marks (§ 15.1); by refusing to retract a handover that Section 13.1 renders of no effect; by refusing to cooperate in the assignment of the Covington lease after Plaintiffs exercised their right to assume it (§ 15.2); by refusing to honor Plaintiffs' exercised option to purchase the assets of the franchised business (§ 15.3); by failing to pay the amounts termination accelerated (§ 15.1(g)); and by permitting the removal and disposition of Plaintiffs' Collateral (§ 4.17).

98. As a direct and proximate result, Fat Boy's Franchise and Savvy Sliders have been damaged in an amount to be proven at trial, including past-due and accelerated amounts under Section 15.1(g), loss-of-bargain damages under Section 15.5, and attorneys' fees and costs under Section 16.6. They have also suffered irreparable harm entitling them to temporary, preliminary, and permanent injunctive relief and to specific performance of Sections 15.1, 15.2, and 15.3, as FBP Covington agreed in Section 16.5.

## COUNT II — BREACH AND ANTICIPATORY BREACH OF THE METAIRIE, HARVEY, AND BATON ROUGE FRANCHISE AGREEMENTS

**(Fat Boy's Franchise and Savvy Sliders against FBP Metairie and FBP Harvey; Fat Boy's Franchise against FBP BR1)**

99. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

100. The Metairie Franchise Agreements, the Harvey Franchise Agreements, and the Baton Rouge Franchise Agreement are valid and enforceable contracts that remain in effect.

101. Each of FBP Metairie, FBP Harvey, and FBP BR1 has breached those agreements, and has made clear that it does not intend to perform them, by listing its franchised restaurant for turnkey sublease or assignment to an operator outside the franchise systems without Plaintiffs' notice or consent.

102. The Covington and Kenner defaults and terminations, involving franchisees under common control with each of these Defendants, are also defaults under Section 14.4(q) of each of these agreements.

103. Unless restrained, Defendants will abandon or transfer the remaining Franchise Locations, causing irreparable injury to Plaintiffs' franchise systems, goodwill, and contractual rights, including the right of first refusal, for which there is no adequate remedy at law. Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief and to damages in an amount to be proven at trial.

**COUNT III — TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114**
**(Deep South, Fat Boy's Franchise, Savvy Sliders Company, and Savvy Sliders against FBP Covington and Corchiani)**

104. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

105. Deep South owns the Fat Boy's Marks and Savvy Sliders Company owns the Savvy Sliders Mark. Each registration is valid and subsisting.

106. FBP Covington's license to use the Marks ended when the Covington Franchise Agreements terminated, no later than August 9, 2026. Despite termination and demand, the Marks and their associated trade dress remain displayed at and upon the Covington Location, which Defendants have announced will reopen as Tommy's Pizza.

107. FBP Covington's continued use of the Marks at the Covington Location after termination is likely to cause confusion, mistake, and deception about the source, sponsorship, and affiliation of that restaurant, and infringes registered marks in violation of 15 U.S.C. § 1114.

108. Plaintiffs have no adequate remedy at law and, on a showing of likelihood of success, are entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a). Plaintiffs are entitled to injunctive relief, damages, profits, and attorneys' fees under 15 U.S.C. § 1117.

**COUNT IV — FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a)**

**(All Plaintiffs against FBP Covington, FBP of America, Corchiani Investments, and Corchiani)**

109. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

110. On Fat Boy's Pizza letterhead, beneath Plaintiffs' Marks, Defendants announced that they were "excited to warmly welcome Tommy's Pizza to this

location" and that the same "team looks forward to welcoming [customers] again soon under the Tommy's Pizza name." They let Tommy's Pizza advertise the Covington Location and the restaurant's telephone number as its own. They left Plaintiffs' signage and trade dress in place for a successor concept to trade on. That conduct uses false and misleading designations, descriptions, and representations in commerce, and is likely to cause confusion as to Tommy's Pizza's affiliation with Plaintiffs and Plaintiffs' sponsorship or approval of the successor operation, in violation of 15 U.S.C. § 1125(a).

111. The false association has already been communicated to the public, on the door of the franchised restaurant and on the competitor's website. Every day the announcement stands under Plaintiffs' Marks, Plaintiffs' customer goodwill is redirected to the successor.

112. Defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Plaintiffs' goodwill and commercial reputation. Plaintiffs are entitled to injunctive relief, damages, profits, and attorneys' fees.

## COUNT V — BREACH OF ARTICLE 11 AND 12 COVENANTS
### (Fat Boy's Franchise and Savvy Sliders against Corchiani, Corchiani Investments, and FBP of America)

113. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

114. In Appendix B to the Franchise Agreements, Corchiani, Corchiani Investments, and FBP of America each agreed to be jointly, severally, and personally

bound by the non-monetary terms of those agreements, including the confidentiality, non-competition, and non-solicitation covenants of Articles 11 and 12, to the same extent as the franchisees themselves.

115. These Defendants have breached those undertakings, and unless restrained will continue to breach them, by, among other things: (1) orchestrating and carrying out the closure of the Covington Location and its purported handover to a Competing Business, to be staffed by the franchised restaurant's manager and/or staff; (2) allowing the franchised restaurant's customers and its general manager to be diverted to that Competing Business; (3) participating in the disposition of the Kenner business and its assets; (4) refusing to honor Plaintiffs' exercised rights under Sections 15.2 and 15.3 at Covington; and (5) marketing the remaining franchised restaurants for disposition outside the franchise systems.

116. Plaintiffs have been damaged by these breaches and face irreparable injury for which there is no adequate remedy at law. Plaintiffs are entitled to injunctive relief and damages.

**COUNT VI — BREACH OF SECURITY AGREEMENT AND FOR PRESERVATION AND ENFORCEMENT OF SECURITY INTEREST**

**(Fat Boy's Franchise and Savvy Sliders against FBP Covington; Fat Boy's Franchise against FBP Kenner)**

117. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

118. Under Section 4.17, FBP Covington granted Fat Boy's Franchise and Savvy Sliders, and FBP Kenner granted Fat Boy's Franchise, a continuing security

interest in the Collateral of its franchised business, securing all indebtedness of the franchisee and its affiliates.

119. The security interests are enforceable and are perfected by UCC-1 financing statements. *See* Comp. Ex. E.

120. Every condition to enforcement has occurred. The Covington Franchise Agreements and the Kenner Franchise Agreement were terminated for uncured, incurable defaults, and all financial obligations were accelerated under Section 15.1(g). Plaintiffs are entitled to liquidated damages to the tune of hundreds of thousands of dollars for pursuant to Section 14.8. Plaintiffs' security interests continue in the Collateral and in its proceeds despite any purported sale, handover, or other disposition made without Plaintiffs' consent.

121. The Covington Collateral sits in premises FBP Covington has purported to surrender to a stranger, at imminent risk of removal and disposition, and removal has already begun. The Kenner Collateral was purportedly sold to another entity without Plaintiffs' consent and without any accounting. Plaintiffs are entitled to an order restraining any further disposition of the Collateral; requiring an accounting and a verified inventory of the Collateral of each franchised business, including the Kenner Collateral and its proceeds; permitting inspection; requiring FBP Covington and FBP Kenner to assemble the Collateral and make it available to

Plaintiffs; and granting foreclosure of Plaintiffs' security interests or delivery of the Collateral in partial satisfaction of the indebtedness.

**COUNT VII — CONVERSION**

**(Fat Boy's Franchise and Savvy Sliders against FBP Covington and Corchiani; Fat Boy's Franchise against FBP Kenner and Corchiani)**

122. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

123. Plaintiffs hold perfected security interests in the Collateral of the Covington and Kenner franchised businesses.

124. The equipment described in Section 15.1(c) of the Franchise Agreement constitutes the franchisor's proprietary property which Defendants were required to return to Plaintiffs on termination.

125. Defendants wrongfully exercised dominion and control over that property and the Collateral after termination.

126. Upon information and belief, Corchiani personally directed and participated in each of these acts.

127. As a direct and proximate result, Plaintiffs have been damaged in an amount to be proven at trial, including the value of the converted property and its proceeds, and are entitled to injunctive relief restraining further disposition of the Collateral.

**COUNT VIII — BREACH OF THE KENNER FRANCHISE AGREEMENT**

**(Fat Boy's Franchise against FBP Kenner)**

128. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

129. The Kenner Franchise Agreement is a valid and enforceable contract and Fat Boy's Franchise performed its obligations thereunder.

130. FBP Kenner materially breached that agreement by: (i) ceasing operations and abandoning the franchised business without notice or consent (§§ 8.1, 14.3(h)); (ii) transferring the franchised business/premises and its assets without consent (§ 13.1); and (iii) after the March 27, 2026, termination, by refusing to perform its post-termination obligations under Article 15, including the return of Plaintiffs' proprietary equipment, payment of the accelerated amounts (§ 15.1(g)), and preservation of the assets subject to Plaintiffs' reserved purchase option (§ 15.3) and security interest (§ 4.17).

131. As a direct and proximate result, Fat Boy's Franchise has been damaged in an amount to be proven at trial, including unpaid and accelerated amounts, liquidated damages under Section 14.8 or loss-of-bargain damages under Section 15.5, and attorneys' fees and costs under Section 16.6.

**COUNT IX — DECLARATORY JUDGMENT, 28 U.S.C. § 2201**
**(All Plaintiffs against All Defendants)**

132. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

133. An actual, justiciable controversy exists over the parties' rights under the Franchise Agreements. A declaration is necessary because Defendants have

purported to convey franchised premises, businesses, and Collateral to third parties without consent.

134. Plaintiffs are entitled to a declaration that (a) any purported transfer, sublease, assignment, surrender, or handover of any Franchise Location, franchised business, or Collateral at the Covington and Kenner Locations made without Plaintiffs' prior written consent is unauthorized and of no effect under Section 13.1; (b) Fat Boy's Franchise and Savvy Sliders validly and timely exercised their right under Section 15.2 to assume the lease for the Covington Location, and validly invoked their option under Section 15.3 to purchase the assets of that franchised business; and (c) Plaintiffs' perfected security interests continue in the Collateral of each franchised business and in its proceeds despite any purported disposition made without Plaintiffs' consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Enter temporary, preliminary, and permanent injunctive relief (a) restraining Defendants and all persons in active concert or participation with them from selling, assigning, transferring, subleasing, licensing, handing over, or surrendering the franchised business, Franchise Location, leasehold, or Collateral, of the Covington Location and any transaction arising from the listings of the Metairie, Harvey, and Baton Rouge Locations; (b) restraining Defendants from

removing, selling, encumbering, concealing, or disposing of any Collateral; (c) restraining Defendants from using Plaintiffs' trademarks and trade dress or representing any affiliation between a successor operation and Plaintiffs' brands, and requiring the de-identification Section 15.1 requires at the Covington Location; (d) restraining Defendants, their principals, and their personnel from operating, assisting, or performing services for any competing restaurant at any Franchise Location; (e) restraining Defendants from listing or marketing any Franchise Location for sale, sublease, or assignment except in compliance with Sections 13.1 and 13.2, and requiring them to withdraw the existing listings of the Metairie, Harvey, and Baton Rouge Locations; and (f) requiring Defendants to perform their existing contractual obligations, including retracting the purported unauthorized handover of the Covington Location, providing a verified inventory of and access to the Collateral, removing and returning Plaintiffs' proprietary equipment under Section, and cooperating in the assignment of the Covington lease;

B. Enter judgment for Plaintiffs and against Defendants for damages, including past-due and accelerated amounts, loss-of-bargain damages under Section 15.5, damages for conversion of the Collateral and of Plaintiffs' equipment, and Defendants' profits under 15 U.S.C. § 1117;

C. Order specific performance of the post-term obligations of the Franchise Agreement, including Sections 15.1, 15.2, and 15.3;

D. Enter judgment for Plaintiffs on their claim to enforce their security interests, including an accounting, assembly and delivery of the Collateral, and foreclosure;

E. Declare the parties' rights as requested in Count IX;

F. Award Plaintiffs their attorneys' fees and costs under Section 16.6 of the Franchise Agreements and 15 U.S.C. § 1117;

G. Award pre- and post-judgment interest; and

H. Grant such other and further relief as the Court deems just and proper.

Dated: August 11, 2026

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI, P.A.**
*Counsel for Plaintiff*
One Biscayne Tower
2 S. Biscayne Blvd. 34th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
By: /s/ Mary Nikezic
**MARY NIKEZIC – FBN 92928**
E-mail: mnikezic@zarcolaw.com
E-mail: bandrade@zarcolaw.com
**KAARI GAGNON –FBN 46106**
E-mail: kgagnon@zarcolaw.com
**TAYLOR DUNCKER – FBN 1064930**
E-mail: tduncker@zarcolaw.com
E-mail: agarcia@zarcolaw

## VERIFICATION

I, Maher Bashi, state that I am an authorized representative of Fat Boy's Pizza Franchise, LLC, Savvy Sliders Franchise, LLC, Deep South IP, LLC, and HS FBP LLC, that I have read the foregoing Verified Complaint, and that the factual allegations in it are true and correct based on my personal knowledge, except as to those matters stated on information and belief, which I believe to be true.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on August 10, 2026.

Maher Bashi