UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAT BOY'S PIZZA FRANCHISE, LLC, et al.,

Plaintiffs,

Case No. 2:26-cv-12814

v.

Honorable Susan K. DeClercq
United States District Judge

FBP COVINGTON, LLC, et al.,

Defendants.
_______________________________________/

**OPINION AND ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 2)**

Before this Court is an *ex parte* Motion for Temporary Restraining Order (TRO), filed by Plaintiffs Fat Boy's Pizza Franchise, LLC; Savvy Sliders Franchise, LLC; Savvy Sliders Company, LLC; and Deep South IP, LLC. ECF No. 2. Plaintiffs have sued Defendant Gabriel Corchiani and seven entities he owns and operates,[1] alleging claims under the Lanham Act as well as various breaches of the Parties' franchise agreements. As explained below, this Court will grant the TRO to preserve the status quo at Corchiani's restaurant in Covington, Louisiana.

---

[1] FBP Covington, LLC; Fat Boy's Pizza, LLC; FBP Express Harvey, LLC; FBP BR1, LLC; FBP Express Kenner, LLC; FBP of America, LLC; and Corchiani Investments, Inc.

## I. BACKGROUND

Plaintiffs' Verified Complaint sets out the following facts. In approximately 2020, Defendant Gabriel Corchiani founded Fat Boy's Pizza restaurant. ECF No. 1 at PageID.9. In May 2024, Corchiani sold the Fat Boy's Pizza intellectual property to Plaintiff Deep South IP, LLC ("Deep South")—which was co-owned at the time by Plaintiff-affiliated entities and Corchiani-affiliated entities—and a new entity was formed as Fat Boy's Pizza's Franchisor: Fat Boy's Pizza Franchise, LLC. ("Fat Boy's Pizza Franchise"). *Id.* at PageID.12. Corchiani and his entities remained involved, "agree[ing] to remain in the system as franchisees, to co-brand five existing restaurants, and to develop four more." *Id.* On April 1, 2025, the Parties signed an amendment to the original agreement, under which Corchiani and Corchiani Investments relinquished all ownership interests in Deep South and entities that own the Fat Boy's Pizza Franchise. *Id.* at PageID.12–13. Since that date, Corchiani's role has been that of an ordinary franchisee. *Id.* at PageID.13.

Now, Fat Boy's Pizza Franchise, LLC ("Fat Boy's Pizza Franchise") and Savvy Sliders Franchise, LLC and Savvy Sliders Company, LLC (collectively "Savvy Sliders Franchise") are fast-causal restaurant brands that generally continue to operate under franchise agreements. ECF No. 1 at PageID.9–10. At some locations, Fat Boy's Pizza Franchise and Savvy Sliders Franchise allow franchisees

to operate a single, co-branded restaurant. *Id.* at PageID.9. Both brands are owned and managed from headquarters in Farmington Hills, Michigan. *Id.*

Corchiani's restaurant in Covington, Louisiana—the Covington Location—is the focus of Plaintiff's TRO motion. Defendant FBP Covington, LLC ("FBP Covington"), signed two franchise agreements for a co-branded restaurant in Covington, Louisiana. ECF No. 1 at PageID.13. The franchise agreement between FBP Covington and Fat Boy's Pizza Franchise (the "Covington Franchise Agreement") was effective beginning June 1, 2024, ECF No. 1-1; the franchise agreement between FBP Covington and Savvy Sliders Franchise was effective beginning September 12, 2024, ECF No. 1-2. *See* ECF No. 1 at PageID.13. Those franchise agreements are materially identical, ECF No. 1 at PageID.15, and contain the following provisions relevant to this Order:

- "Franchisees must continually operate the Franchise Business . . . at optimal capacity and efficiency." ECF No. 1-1 at § 8.1, PageID.72.
- "Any abandonment by Franchisee of the Franchise Business" is considered default and good cause for termination by the Franchisor with no opportunity to cure, ECF No. 1-1 at §§14.3(h), 14.4, PageID.99. Abandonment is "conclusively presumed" if the franchise is closed "for a period of two (2) consecutive business days without the prior written consent of the franchisor. *Id.* at § 14.3(h). Termination for default by abandonment is "effective on delivery of written notice to Franchisee." *Id.* at § 14.5(a), PageID.101.
- Franchisees may not "sell, assign, transfer, convey, give away, pledge, mortgage, or otherwise encumber an interest in . . . the Franchise Business or . . . the Franchise Location" without the

Franchisor's prior written consent. ECF No. 1-1 at § 13.1, PageID.93.

- The Franchisor has a continued security interest in the Franchisee's assets, including certain equipment, fixtures, and other inventory. ECF No. 1-1 at § 4.17, PageID.64–65.

Despite this agreement language, FBP Covington abruptly closed the Covington Location on August 6, 2026, without notice to Plaintiffs. ECF No. 1 at PageID.24. It remained closed on August 7, but a letter appeared on the door, printed on Fat Boy's Pizza Franchise letterhead and using a Fat Boy's Pizza Franchise registered design mark, explaining that "[o]ur team looks forward to welcoming you again soon under the Tommy's Pizza name," the name of a competing pizza restaurant and bar in Louisiana. *Id.* at PageID.24; *see also* ECF No. 2-2 at PageID.718. On August 7, 2026, Plaintiffs' counsel served a notice of default and termination on FBP Covington. ECF No. 1-6. Plaintiffs, through security cameras, observed that the restaurant remained closed on August 8 and 9, though the restaurant's arcade games were being removed. ECF No. 1 at PageID.25–26. On August 9, 2026, Corchiani informed Plaintiffs' principal that "Covington is gone." ECF No. 1-7.

Plaintiffs further allege that this is a common playbook of Corchiani's—Covington is not the first abruptly-closed franchise location. ECF No. 1 at PageID.30–32. In March 2026, Corchiani—through FBP Express Kenner, LLC ("FBP Kenner")—abruptly closed a Fat Boy's Pizza Franchise location in Kenner,

Louisiana, without notice to Plaintiffs. *Id.* at PageID.30–31. FBP Kenner did not de-identify the premises, return Plaintiffs' equipment, or pay the amount due at termination. *Id.* at PageID.31. Rather, it sold the Kenner restaurant and its assets. *Id.* Corchiani did the same with a Fat Boy's Pizza Franchise location in the French Quarter of New Orleans. *Id.* at PageID.32. And three other franchised restaurants—located in Metairie, Harvey, and Baton Rouge, Louisiana, each owned by the corresponding LLC Defendant—are listed for sale as "Turnkey Restaurant Opportunit[ies]," without Plaintiff's prior written consent. *Id.* at PageID.32–34.

Consequently, Plaintiffs sued and moved for a TRO to preserve the status quo on August 12, 2026. ECF Nos. 1; 2. Because Defendants have not yet been served or heard in this matter, the Court will resolve the motion *ex parte*.

## II. LEGAL STANDARD

A TRO "is an extraordinary remedy" granted only if the movant demonstrates the circumstances "clearly demand" by balancing four factors:

> (1) the movant's likelihood of success on the merits,
> (2) any irreparable injury to the movant without the injunction,
> (3) whether the balance of hardships favors the movant, and
> (4) whether the injunction would be adverse to the public interest.

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *accord Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam); *see also Muffler Man Supply Co. v. TSE Auto Serv., Inc.*, 739 F.3d 598, 602 (E.D. Mich. 2024) (citing *Overstreet*, 305 F.3 at 573). "The standard for issuing a temporary restraining order

is logically the same as for a preliminary injunction with emphasis, however, on the irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). "[W]hen *ex parte* temporary restraining orders are proper, they should preserve the status quo only until a hearing can be held. *Vector Rsch. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692, 696 (6th Cir. 1996) (citation and quotation marks omitted).

Courts may grant a TRO *ex parte* if immediate and irreparable harm is shown and the movant's attorney certifies why notice is not required. FED. R. CIV. P. 65(b)(1). Specifically, Civil Rule 65(b) states that federal district courts "may issue a temporary restraining order without written or oral notice to the adverse party" only when:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)–(B).

## III. DISCUSSION

Upon consideration of the relevant factors and Civil Rule 65(b), this Court finds, for the reasons provided below, that Plaintiffs have sufficiently demonstrated entitlement to an *ex parte* TRO.

**A. Likelihood of Success on the Merits**

*1. Breach of the Covington Franchise Agreements*

Plaintiffs allege that Defendants breached the Covington Franchise Agreements in multiple ways, but most obviously by abandoning the Covington Location. ECF No. 2 at PageID.313. Applying the relevant state-law standard,[2] Plaintiffs need only demonstrate "that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. Ct. App. 2014); *see also Payphone Connection Plus, Inc. v. Wagners Chef, LLC*, 276 So. 3d 589, 595 (La. Ct. App. 2019).

Here, the franchise agreements with both Fat Boy's Pizza Franchise and Savvy Sliders Franchise are contracts signed by both Parties. *See* ECF Nos. 1-1; 1-2. And Defendants appear to have breached the agreements by closing the Covington Location for more than two consecutive business days, as underscored by Corchiani's own statement that "Covington is gone." ECF No. 1-7 at PageID.286; *see also* ECF No. 1-1 at § 14.3(h), PageID.99 (articulating that such conduct is "conclusively presumed" to constitute abandonment of the restaurant). Indeed, this

[2] The Covington Fat Boy's Pizza Franchise agreement appears to be governed by Louisiana law, *see* ECF No. 1-1 at § 16.3, PageID.108, and the Covington Savvy Sliders Franchise agreement is governed by Michigan law, *see* ECF No. 1-2 at § 16.3, PageID.196–97. The Court need not engage in a choice-of-law analysis here because the elements of breach of contract are the same under both states' laws.

abandonment, under the terms of the contract, is an incurable default that permits the Franchisor (Plaintiff Fat Boy's Pizza Franchise) to terminate the franchise agreement upon delivery of written notice, which it delivered on August 7, 2026. ECF Nos. 1-1 at § 14.5(a), PageID.101; 1-6. And Plaintiffs have been damaged, at the very least by Defendants' refusal to comply with any post-termination obligations.[3] *See* ECF No. 2 at PageID.314–15. Therefore, Plaintiffs are likely to succeed on their breach-of-contract claim.

*2. Breach of Security Interest Provision*

Relatedly, Plaintiffs allege that Defendants violated the Parties' security agreement, arguing that Plaintiffs hold a perfected security interest in FBP Covington's assets and the Covington Restaurant; FBP Covington granted that interest and authorized the filings; Plaintiffs filed UCC-1 financing statements in Louisiana; all amounts due and owing accelerated when the Covington Franchise Agreements terminated; and FBP Covington has not paid. ECF No. 2 at PageID.319. These allegations about a contractual agreement clearly being breached at Plaintiffs' expense are sufficient to establish a likelihood of success on Plaintiffs' breach of

[3] This Court acknowledges that it has the power to enforce those obligations if appropriate, *see, e.g.*, *Little Caesar Enters., Inc. v. Reyes 1, Inc.*, No. 19-cv-11437, 2020 WL 2395206, at *4 (E.D. Mich. May 11, 2020) (enforcing post-termination obligations of a franchise agreement), but this Court need not address those obligations at this juncture given Plaintiffs' choice not to seek enforcement of the post-termination obligations via this TRO, *see* ECF No. 2 at PageID.299–300.

security agreement claim. *See Plainfield Specialty Holdings II Inc. v. Child.'s Legal Servs., PLLC*, 634 F. Supp. 2d 833, 843 (E.D. Mich. 2009) (finding likelihood of success on the merits where plaintiff alleged the parties had a contract, plaintiffs perfected their security interest, and defendants did not pay the amount due).

*3. Violation of Lanham Act*

Plaintiffs allege that Defendants are infringing on Fat Boy's Pizza Franchise's trademarks in violation of 15 U.S.C. § 1114, and committing false advertising in violation of 15 U.S.C. § 1125(a). *See* ECF No. 2 at PageID.316–18. The same test applies to both claims, focusing on whether Defendants' use of Plaintiffs' trademarks was likely to cause consumer confusion. *See, e.g.*, *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (applying the likelihood of confusion test to both types of claims by considering eight factors: the mark's strength, the products' relatedness, the marks' similarities, evidence of actual confusion, marketing channels used, the defendant's intent of choosing the mark, the likelihood of expanding production, and the likely degree of consumer care). To establish such claims, "a plaintiff must show that: (1) it owns the registered trademark, (2) the defendant used the trademark in commerce, and (3) the use was likely to cause confusion." *Bliss Collection, LLC v. Latham Cos.*, 82 F.4th 499, 506 (6th Cir. 2023). Continued, unauthorized use of an original trademark "by a former licensee is particularly likely to cause consumer confusion." *Blue Cross & Blue Shield Mut. of*

*Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 333 (6th Cir. 1997); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997).

Here, Plaintiffs have demonstrated ownership of the Fat Boy's Pizza Franchise marks, *see* ECF No. 1 at PageID.11; ECF No. 2-1 at PageID.326–27, and have alleged that Defendants continue to use the marks after termination—most egregiously through the letter bearing Fat Boy's Pizza Franchise's logo and promising Tommy's Pizza is coming soon, *see* ECF Nos. 1 at PageID.25–26; 2-2 at PageID.718. This is sufficient to establish a likelihood of confusion, meaning both claims are likely to succeed.[4] *See, e.g.*, *Little Caesar Enters. v. Miramar Quick Serv. Rest. Corp.*, No. 19-1860, 2020 WL 4516289, at *3 (6th Cir. June 25, 2020) (finding continued use of trademarks after termination of franchise agreement established likelihood of success on Lanham Act claims).

**B. Irreparable Injury**

Next, this Court must consider whether Plaintiffs will suffer irreparable injury without the TRO. Plaintiffs argue that they will suffer irreparable injury without the TRO because Defendants are poised to convert the Covington Location to a competitor restaurant, which puts the customer goodwill accrued at the Covington

---

[4] Plaintiffs also allege that Defendants have breached (or intend to breach) the franchise agreements at other restaurants. Given the limited scope of Plaintiffs' TRO request, however, the Court need not evaluate the likelihood of success of these claims.

Location at risk. Further, Plaintiffs argue, irreparable harm will flow from the loss of control over their trademarks and associated customer confusion.

"A plaintiff's harm from the denial of a [TRO] is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). But, the Sixth Circuit has held "that no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). In fact, irreparable harm or injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" because of the trademark infringement. *Id.*; *see also FenF, LLC v. Yogabody Nats., LLC*, No. 16-13483, 2017 WL 4841440, at *2 (E.D. Mich. Oct. 26, 2017). Thus, Plaintiffs have established a "rebuttable presumption of irreparable harm" given the likelihood of success on their Lanham Act claims. *See* 15 USC § 1116(a); *see also Circuit City Stores*, 165 F.3d at 1056.

As to the breach-of-contract claims, the Sixth Circuit has noted that "[t]he loss of customer goodwill often amounts to irreparable injury." *Basicomputer*, 973 F.2d at 512; *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). As applied to franchise relationships, the

"inability to preserve the goodwill already accumulated at the [franchisee's] location would result in irreparable harm to" the franchisor. *Dunkin' Donuts Inc. v. Taseski*, 47 F. Supp. 2d 867, 878 (E.D. Mich. 1999). So too here: allowing Defendants to transfer the Covington restaurant to Tommy's Pizza risks the loss of Fat Boy's Pizza Franchise's goodwill and customer base. *See id.* In turn, Plaintiffs are plainly at risk of irreparable harm should the status quo not be preserved. *See id.*

Additionally, the Court finds good cause to enter the TRO *ex parte*, given the risk that notice to Defendants may accelerate irreparable injury to Plaintiffs through sale of assets or restaurant turnover. *See* FED. R. CIV. P. 65(b)(1); *see also, e.g.*, ECF No. 2 at PageID.295 (stating that immediate and irreparable injury would occur were Defendants given advanced notice because this would give them "the interval they need to complete the handover and remove the remaining collateral," rendering Plaintiffs' relief ineffectual).

**C. Substantial Harm to Others**

Considering whether granting the TRO would cause substantial harm to others is a fact-based inquiry. *Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 426 (6th Cir. 2006). "Others" includes "defendants." *Id.*; *see also Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 952 (E.D. Mich. 2008). There is no indication that the general public would be harmed by issuing the TRO. While it is true that FBP Covington may be harmed by the TRO, FBP Covington ran the risk that Plaintiffs would seek to enforce

the Franchise Agreements against it upon any alleged breach. *See Kelly Servs.*, 530 F. Supp. at 952 (finding that the defendant "brought this harm upon herself" by breaking noncompete agreement, and "willfully incurred the risk that Plaintiff might enforce the terms of" the agreement). And restraining Defendants from conducting business with an infringing trademark is not a hardship for consideration because "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *BlephEx, LLC v. Myco Indus., Inc.*, No. 19-13089, 2020 WL 5951504, at *8 (E.D. Mich. Oct. 8, 2020) (internal quotation marks omitted). Thus, this factor favors granting a TRO.

**D. Public Interest**

As to the final factor, Plaintiffs argue that granting a TRO is in the public interest because "[e]nforcement of contractual duties is in the public interest." *Certified Restoration*, 511 F.3d at 551. So to is "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006). Thus, because Plaintiffs have shown a likelihood of consumer confusion and compelling allegations of contract duty breaches, this factor also weighs in favor of issuing a TRO. *See id.*

**E. Bond**

Civil Rule 65(c) states that a TRO may enter "only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Although the rule appears mandatory, "the rule in [the Sixth Circuit] has long been that the district court possesses discretion over *whether* to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995)). Without Defendants' appearance, this Court lacks the benefit of its arguments on what amount would be proper to compensate for any potential wrongful restraint. Accordingly, while this Court may revisit the issue at the preliminary-injunction stage, a bond will not be required at this time. *See id.*

In sum, the Court finds that all factors favor issuance of an *ex parte* TRO that will maintain the status quo and will grant the motion without requiring bond at this time.

**IV. CONCLUSION**

Accordingly, it is **ORDERED** that this 13th day of August, 2026, at 4:40 P.M., Plaintiffs' Motion for Temporary Restraining Order, ECF No. 2, is **GRANTED** such that Defendants, their officers, agents, servants, employees, and

attorneys, and all other persons in active concert or participation with any of them **ARE IMMEDIATELY ENJOINED** from:

1. Opening or operating a competing restaurant at the Covington Location, permitting or assisting any other person to operate one there, and delivering possession of the premises or granting any right of entry or access to them for that purpose. A competing restaurant is one that sells pizza, sliders, other sandwiches, or chicken wings for dine-in, carry-out, catering, or delivery;

2. Voluntarily assigning, subletting, surrendering, terminating, or modifying the lease for the Covington Location without Plaintiffs' prior written consent;

3. Removing, selling, encumbering, or otherwise disposing of the Franchised Assets[5] at the Covington Location;

4. Transferring or forwarding the telephone number "(985) 348-2182," and permitting any other person to use it other than Plaintiffs;

[5] "Franchised Assets" means the furniture, fixtures, equipment, appliances, machinery, signage, small wares, inventory, supplies, and point-of-sale hardware and software located at the franchised location or in connection with the franchised business.

5. Using any FAT BOY'S PIZZA or SAVVY SLIDERS trademark[6] at the terminated Covington Location or otherwise to advertise or promote any restaurant that Plaintiffs have not authorized in writing;

6. Consummating any sale, assignment, sublease, or other transfer of the franchised restaurant at 2565 Metairie Road, Suite 100, Metairie, Louisiana, its lease, or its Franchised Assets other than inventory sold in the ordinary course, without first giving Plaintiffs the written offer notice and right of first refusal pursuant to Section 13.2 of the Franchise Agreement;

7. Consummating any such transfer of the franchised restaurant at 1535 Lapalco Boulevard, Harvey, Louisiana, its lease, or its Franchised Assets, without first giving Plaintiffs the written offer notice and right of first refusal pursuant to Section 13.2 of the Franchise Agreement;

8. Consummating any such transfer of the franchised restaurant at 3624 Nicholson Drive, Building 500, Unit 2, Baton Rouge, Louisiana, its lease, or its Franchised Assets, without first giving Plaintiffs the written offer notice and right of first refusal pursuant to Section 13.2 of the Franchise Agreement;

---

[6] U.S. Trademark Registration Nos. 6,114,259 (FAT BOY'S PIZZA), 6,114,260 (FAT BOY'S PIZZA "SIZE MATTERS" and design), 6,654,870 (MORE TO LOVE), and 5,871,501 (SAVVY SLIDERS), and the trade dress, décor, menu boards, uniforms, packaging, and signage used at Fat Boy's Pizza and Savvy Sliders restaurants.

It is further **ORDERED**, that **on or before August 14, 2026 at 5:00 p.m. ET**, Defendants shall cease using the telephone number "(985) 348-2182" and shall remove and preserve the notice posted at the Covington Location that bears the FAT BOY'S PIZZA "SIZE MATTERS" design mark and welcomes Tommy's Pizza to that location. Defendants shall not remove or dispose of any other signage or trade dress there.

It is further **ORDERED** that:

1. The parties shall appear before this Court for a Preliminary Injunction hearing on August 27, 2026 at 12:00 p.m. ET;

2. Defendants shall file and serve any response papers on or before August 20, 2026;

3. Plaintiffs shall file and serve any reply papers on or before August 24, 2026;

4. Prior to the hearing, Defendants may move to vacate or modify this Order on two business days' notice to Plaintiffs;

5. No security or bond shall be required under Civil Rule 65(c);

6. Plaintiffs shall serve this Order on Defendants, their known counsel, and any person known to Plaintiffs to be occupying or preparing to operate a restaurant at the Covington Location, and shall file proof of service, on or before August 14, 2026; and

7. This Order expires 14 days after entry, on August 27, 2026, at 4:40 P.M. ET, unless extended for good cause or by consent. FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: August 13, 2026