UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAT BOY'S PIZZA FRANCHISE, LLC, et al.,

Plaintiffs,

Case No. 2:26-cv-12814

v.

Honorable Susan K. DeClercq
United States District Judge

FBP COVINGTON, LLC, et al.,

Defendants.
_______________________________________/

**OPINION AND PRELIMINARY INJUNCTION ORDER**

In this franchise dispute, franchisor Plaintiffs allege that franchisee Defendants have violated multiple franchise agreements, most egregiously through the abrupt closure and sale of a Covington, Louisiana restaurant to a direct competitor. *See generally* ECF No. 1. This Court issued a temporary restraining order ("TRO") on August 16, 2026, to preserve the status quo at that restaurant. *See* ECF No. 8.

On September 1, 2026, this Court heard argument and took evidence on Plaintiffs' motion for a preliminary injunction, ECF No. 2, Plaintiffs' motion to hold Defendants in contempt of Court for violating the TRO, ECF No. 10, and Defendants' motion to vacate the TRO, ECF No. 14. That same day, this Court granted Plaintiffs' request for a preliminary injunction, granted Plaintiffs' request to hold Defendants in contempt and awarded attorneys' fees as a sanction, denied

Defendants' motion to vacate the TRO, and indicated that this written opinion would follow. ECF No. 29.

## I. BACKGROUND

Plaintiffs Fat Boy's Pizza Franchise, LLC; Savvy Sliders Franchise, LLC; Savvy Sliders Company, LLC; and Deep South IP, LLC, have sued Gabriel Corchiani and seven entities he owns and operates,[1] alleging claims under the Lanham Act as well as various breaches of the parties' franchise agreements. *See generally* ECF No. 1.

### A. Fat Boy's Pizza and Savvy Siders

As explained in Plaintiffs' Verified Complaint and confirmed at the September 1, 2026, hearing, Defendant Gabriel Corchiani founded the Fat Boy's Pizza brand. ECF No. 1 at PageID.9. In May 2024, Corchiani sold the Fat Boy's Pizza intellectual property to Plaintiff Deep South IP, LLC ("Deep South")—which was co-owned at the time by Plaintiff-affiliated entities and Defendant Corchiani Investments, Inc.—and a new entity was formed as Fat Boy's Pizza's Franchisor: Fat Boy's Pizza Franchise, LLC ("Fat Boy's Franchisor"). *Id.* at PageID.12. Corchiani and his entities remained involved, "agree[ing] to remain in the system as franchisees, to co-brand five existing restaurants, and to develop four more." *Id.* On

[1] FBP Covington, LLC; Fat Boy's Pizza, LLC; FBP Express Harvey, LLC; FBP BR1, LLC; FBP Express Kenner, LLC; FBP of America, LLC; and Corchiani Investments, Inc.

April 1, 2025, Corchiani and Corchiani Investments relinquished all ownership interests in Deep South and entities that own the Fat Boy's Pizza Franchise. *Id.* at PageID.12–13. Since that date, Corchiani's role has been that of an ordinary franchisee. *Id.* at PageID.13.

Now, Fat Boy's Franchisor and Savvy Sliders Franchise, LLC ("Savvy Sliders Franchisor"; together, the "Franchisor Plaintiffs") are fast-causal restaurant brands that generally operate under franchise agreements. ECF No. 1 at PageID.9–10. At some locations, Fat Boy's Franchisor and Savvy Sliders Franchisor allow franchisees to operate a single, co-branded restaurant. *Id.* at PageID.9. Both brands are owned and managed from headquarters in Farmington Hills, Michigan. *Id.*

**B. The Covington Location**

Corchiani's Covington, Louisiana restaurant (the "Covington Location") is the focus of this lawsuit. Defendant FBP Covington, LLC ("FBP Covington"), signed two franchise agreements for a co-branded restaurant at the Covington Location. ECF No. 1 at PageID.13. The agreement between FBP Covington and Fat Boy's Franchisor was effective beginning June 1, 2024, ECF No. 1-1, and the agreement between FBP Covington and Savvy Sliders Franchisor was effective beginning September 12, 2024, ECF No. 1-2. Those franchise agreements (together, the "Covington Franchise Agreements") are materially identical, ECF No. 1 at PageID.15, and contain the following provisions relevant to this Opinion:

- "Franchisee must continually operate the Franchise Business . . . at optimal capacity and efficiency." ECF No. 1-1 at § 8.1, PageID.72.

- "Any abandonment by Franchisee of the Franchise Business" is considered default and good cause for termination by the Franchisor with no opportunity to cure, ECF No. 1-1 at §§14.3(h), 14.4, PageID.99. Abandonment is "conclusively presumed" if the franchise is closed "for a period of two (2) consecutive business days without the prior written consent of Franchisor." *Id.* at § 14.3(h). Termination for default by abandonment is "effective on delivery of written notice to Franchisee." *Id.* at § 14.5(a), PageID.101.

- Franchisees may not "sell, assign, transfer, . . . an interest in . . . the Franchise Business or . . . the Franchise Location" without the Franchisor's prior written consent. ECF No. 1-1 at § 13.1, PageID.93. An attempted transfer made contrary to the Franchise Agreement "will have no effect and will constitute a breach of this Agreement." *Id.*

- The Franchisor has a "continuing security interest" in the Franchisee's assets, including certain equipment, fixtures, and other inventory. ECF No. 1-1 at § 4.17, PageID.64–65.

FBP Covington abruptly closed the Covington Location on August 6, 2026, without notice to Plaintiffs, in violation of the Covington Franchise Agreements. ECF No. 1 at PageID.24. It remained closed on August 7, but a letter appeared on the door, printed on Fat Boy's Pizza Franchise letterhead and using a Fat Boy's Pizza Franchise registered design mark, explaining that "[o]ur team looks forward to welcoming you again soon under the Tommy's Pizza name," a competing pizza restaurant and bar in Louisiana. *Id.*; *see also* ECF No. 2-2 at PageID.718.

On August 7, 2026, Plaintiffs' counsel served a notice of default and immediate termination of the Covington Franchise Agreements on FBP Covington

and Corchiani. ECF No. 1-6. In that notice, Franchisor Plaintiffs informed Defendants that they sought to exercise their post-termination rights to assume the Covington Location's lease, purchase its assets, and enforce their continuing security interest. *Id.* at PageID.283. Franchisor Plaintiffs also demanded the retraction of any purported sale or handover of the Covington Location's assets. *Id.* Plaintiffs, through security cameras, observed that the restaurant remained closed on August 8 and 9, though some property was being removed. ECF No. 2-3 at PageID.723. On August 8, 2026, Corchiani informed Happy Asker—Plaintiffs' principal—through text message that "Covington is gone," ECF No. 1-7,[2] and Plaintiffs' access to the Covington Location's security cameras was cut off, ECF No. 2-3 at PageID.723.

Around the same time, Corchiani and FBP Covington were in the process of selling the Covington Location. *See* ECF No. 38 at PageID.1658. It is not clear when—or if—this sale was completed. The agreement between FBP Covington and Tommy's Pizza Covington 26, LLC ("Tommy's Pizza"), purports to deliver the Covington Location to Tommy's Pizza as of August 5, 2026. ECF No. 14-5 at PageID.1236; *see also* ECF No. 14-4 at PageID.1228. Corchiani testified that the sale was complete as of August 5. ECF No. 38 at PageID.1658. However, the signed

[2] In a declaration submitted under penalty of perjury, Corchiani states that these text messages were exchanged on August 11, 2026. ECF No. 14-4 at PageID.1228. However, Corchiani testified that the texts were exchanged on August 8, 2026. ECF No. 38 at PageID.1655.

sale agreement is not dated or notarized. ECF No. 14-5 at PageID.1241–42. And on cross-examination, Plaintiffs introduced evidence that on August 11, 2026, Corchiani swore under penalty of perjury that he "own[s]"—present tense—several franchise restaurants. ECF No. 38 at PageID.1697.

Further, Corchiani testified that as part of the completed sale, the Covington Location's lease was assigned to Tommy's Pizza no later than August 7, 2026. ECF No. 38 at PageID.1659–60. True, the lease assignment purporting to transfer the Covington Location's lease from FBP Covington to Tommy's Pizza has an effective date of August 7, 2026, ECF No. 14-5 at PageID.1244, but the signature pages are undated, *id*. at PageID.1249–53. And FBP Covington and Tommy's Pizza signed resolutions authorizing the lease assignment on August 10, 2026. *Id.* at PageID.1254–55. Corchiani testified that these signatures were delayed because he did not receive the completed paperwork from his lawyers until August 10; the lease assignment was backdated to reflect the agreement date (August 7) rather than the lawyers' delay. ECF No. 38 at PageID.1660.

### C. Corchiani's Other Franchise Locations and the Louisiana Litigation

Plaintiffs allege that this is a common playbook of Corchiani's—Covington is not the first abruptly-closed franchise location. ECF No. 1 at PageID.30–34. In March 2026, Corchiani—through FBP Express Kenner, LLC ("FBP Kenner")—abruptly closed a Fat Boy's Pizza franchise location in Kenner, Louisiana (the

"Kenner Location"), without notice to Plaintiffs. *Id.* at PageID.30–31. FBP Kenner did not comply with its franchise agreements. *Id.* at PageID.31. Rather, it sold the Kenner Location and its assets. *Id.* Corchiani allegedly did the same with a Fat Boy's Pizza in the French Quarter of New Orleans. *Id.* at PageID.32. And three other franchised restaurants—located in Metairie, Harvey, and Baton Rouge, Louisiana, each owned by the corresponding LLC Defendant—are listed for sale as "Turnkey Restaurant Opportunit[ies]," without Plaintiffs' consent. *Id.* at PageID.32–34. As of September 1, 2026, these three restaurants remained listed for sale with Corchiani's sons as the listing agents. ECF No. 38 at PageID.1692.

Corchiani, for his part, testified that sales of these locations have long been contemplated by the Parties. *See* ECF No. 38 at PageID.1639–41. In June 2025, FBP Kenner offered to sell the Kenner Location to Plaintiffs, who declined and offered to find a prospective buyer. ECF No. 14-4 at PageID.1226. Plaintiffs connected Defendants with a prospective buyer, and eventually, Defendants sought to finalize the sale of four restaurants (in Covington, Kenner, Harvey, and Baton Rouge, Louisiana). *Id.*; *see also* ECF No. 38 at PageID.1647. Corchiani testified that Asker approved the sale, but before it could be completed, Plaintiffs withdrew that consent.[3] *See* ECF No. 14-4 at PageID.1227. Based on that conduct, Defendants filed

[3] The dispute appears to turn on whether Asker consented to the entirety of the sale, or consented only to the prospective buyer's request for a certain percentage of

suit in Louisiana state court in April 2026, alleging breach of contract and violations of Michigan's Franchise Investment Law (the "Louisiana Litigation"). *Id.* at PageID.1227; *see also* ECF No. 14-2 at PageID.929–39.

**D. The TRO and Defendants' Noncompliance**

Plaintiffs sued and moved for a TRO and preliminary injunction to preserve the status quo on August 12, 2026. ECF Nos. 1; 2. This Court entered an *ex parte* TRO on August 13, 2026, enjoining Defendants from operating (or permitting anyone else to operate) a competing restaurant at the Covington Location; disposing of any Franchised Assets;[4] and using Plaintiffs' trademarks and trade dress. ECF No. 8 at PageID.767–68. Defendants were further ordered to cease using the Covington Location's phone number, and to remove and preserve the notice bearing a Fat Boy's Pizza trademark and welcoming Tommy's Pizza to the Covington Location, both by the close of business on August 14, 2026. *Id.* at PageID.769.

Defendants were served with the TRO on August 13, 2026. *See* ECF No. 9 at PageID.772. Plaintiffs also served TEXAMBRE, INC. d/b/a Tommy's on Thomas, the entity running an existing Tommy's Pizza location, as well as the Covington

---

royalties. That question of fact is not presently before this Court, nor is it relevant to the disputes at hand.

[4] As before, "Franchised Assets" means the furniture, fixtures, equipment, appliances, machinery, signage, small wares, inventory, supplies, and point-of-sale hardware and software located at the franchised location or in connection with the franchised business.

Location's landlord and its counsel. *Id.* at PageID.773–74. And on August 15, 2026, Plaintiffs hand-delivered a copy of the TRO to individuals working inside the Covington Location. ECF No. 10-1 at PageID.853.

Despite being served with the TRO, Defendants largely ignored it. *See* ECF No. 10 at PageID.820. Defendants did not timely comply with this Court's order to remove and preserve the notice on Fat Boy's letterhead promising a new restaurant at the Covington Location; Corchiani testified that it remained on the restaurant's door until at least August 17, 2026. ECF No. 38 at PageID.1662–63. Plaintiffs observed several individuals inside the Covington Location on August 15, 2026, cleaning and removing Plaintiffs' Franchised Assets, apparently in preparation for opening a new restaurant. *See* ECF No. 10-1 at PageID.852–53. Many of the Franchised Assets were in a dumpster on the premises. *Id.* And Tommy's Pizza was using the Covington Location's phone number, which was confirmed at the hearing on September 1, 2026, when Plaintiffs' counsel called the phone number and played for this Court a recorded message advertising Tommy's Pizza. *See* ECF No. 38 at PageID.1674. As of September 1, 2026, however, there is no evidence Tommy's Pizza has begun operating a restaurant at the Covington Location.

Based on these allegations, Plaintiffs moved for an order directing Defendants to comply with the TRO and holding Defendants in civil contempt of court for failing

to comply with the TRO. ECF No. 10. On August 19, 2026, this Court granted the motion in part, ordering Defendants to show cause why they should not be held in civil contempt for failing to comply with this Court's TRO. ECF No. 11. The next day, Defendants moved to vacate the TRO. ECF No. 14.

As noted above, this Court took evidence and heard argument on Plaintiffs' motion for preliminary injunction, Plaintiffs' motion for civil contempt, and Defendants' motion to vacate the TRO on September 1, 2026. ECF No. 30. At the conclusion of that hearing, the Court granted Plaintiffs' motions for a preliminary injunction and civil contempt sanctions and denied Defendants' motion to vacate. *See* ECF No. 29. This Opinion follows.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy" granted only if the movant demonstrates the circumstances "clearly demand" by balancing four factors:

> (1) the movant's likelihood of success on the merits,
> (2) any irreparable injury to the movant without the injunction,
> (3) whether the balance of hardships favors the movant, and
> (4) whether the injunction would be adverse to the public interest.

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)); *accord Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on the irreparable harm given that the purpose of a temporary

restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) (citation omitted).

## III. DISCUSSION

### A. Preliminary Injunction

#### *1. Likelihood of Success on the Merits*

##### a. Breach of Contract–Covington Location

At the evidentiary hearing, defense counsel conceded that Corchiani breached the Covington Franchise Agreements by selling the Covington Location to Tommy's Pizza. *See* ECF No. 38 at PageID.1556. Given this concession, Plaintiffs are clearly likely to succeed on their breach-of-contract claims regarding the Covington Location.

Further, the Covington Franchise Agreements impose post-termination obligations upon the franchisee, including to: cease using Plaintiffs' trademarks, logos, and confidential information; de-identify the restaurant; return all branded materials and proprietary equipment; assign the restaurant's telephone numbers and digital assets back to the franchisor; and comply with any other surviving obligations. *See* ECF No. 1-1 at §§ 15.1, 15.4, PageID.104, 106–07.

Plaintiffs now seek to enforce these obligations. Defendants make no argument regarding the post-termination obligations, nor do they present evidence of compliance with these obligations. Given their implicit concession that the

Covington Franchise Agreements are binding, this Court finds it appropriate to enforce the post-termination obligations. *See, e.g.*, *Little Caesar Enters., Inc. v. Reyes 1, Inc.*, No. 19-cv-11437, 2020 WL 2395206, at *4 (E.D. Mich. May 11, 2020) (enforcing post-termination obligations of a franchise agreement via injunction).

b. Anticipatory Breach

Plaintiffs also argue that Defendants have committed anticipatory breach of contract at Corchiani's other franchise locations, in Metairie, Harvey, and Baton Rouge, Louisiana, by listing them for sale. ECF No. 2 at PageID.319–20. Defendants do not respond to the merits of this argument, *see generally* ECF No. 15, but Corchiani did concede that it would be simple for him to take the listings down, ECF No. 38 at PageID.1692–93.

Corchiani's Metairie, Harvey, and Baton Rouge franchise locations are subject to franchise agreements that Plaintiffs allege are materially identical to the Covington Franchise Agreements. *See* ECF No. 1 at PageID.14–15. In turn, they appear to be subject to the same requirement that Corchiani and the LLC Defendants obtain Franchisor permission before selling the restaurants. *See* ECF No. 1-1 at § 13.1, PageID.93. But Defendants have listed all three restaurants for sale without the Franchisor Plaintiffs' consent. *See* ECF Nos. 1-8; 1-9; 1-10.

"Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent

party has the option to either sue immediately for the breach of contract or wait until the time of performance."[5] *Paul v. Bogle*, 484 N.W.2d 728, 735 (Mich. Ct. App. 1992) (citation omitted); *see also Peirre v. Gardner*, 311 So.3d 574, 581 (La. Ct. App. 2021) ("[A]n anticipatory breach [is] a *refusal* to perform a contractual obligation" (internal quotation marks and citation omitted)). A party may voluntarily repudiate via actions that are "both voluntary and affirmative." *Paul*, 484 N.W.2d at 735–36 (internal quotation marks and citation omitted). Here, Defendants' voluntary listing of these franchise locations for sale without Franchisor Plaintiffs' consent is, in effect, a declaration of intent not to perform, *see id.*, meaning Plaintiffs are likely to succeed on their claims of anticipatory breach.

c. Other Claims

Plaintiffs also allege that Defendants have violated the Parties' security agreement, and that the continued use of Fat Boy's Pizza's trademarks beyond August 7, 2026, violates the Lanham Act. This Court previously found a likelihood of success on these claims, *see* ECF No. 8 at PageID.761–62, and Defendants make no argument to the contrary, *see generally* ECF No. 15.[6] This Court continues to

---

[5] The Covington Fat Boy's Pizza Franchise agreement appears to be governed by Louisiana law, *see* ECF No. 1-1 at PageID.108, § 16.3, and the Covington Savvy Sliders Franchise agreement is governed by Michigan law, *see* ECF No. 1-2 at PageID.196–97, § 16.3. The Court need not engage in a choice-of-law analysis here because the elements of anticipatory breach are the same under both states' laws.

[6] Defendants argue that they could not be faulted for failing to immediately

find that Plaintiffs have established a likelihood of success on these claims. *See* ECF No. 8 at PageID.61–62 (collecting cases).

*2. Irreparable Injury*

Next, this Court must consider whether Plaintiffs will suffer irreparable injury without a preliminary injunction. Plaintiffs argue they have suffered and will continue to suffer irreparable injury because Defendants have sold the Covington Location to Tommy's Pizza, which deprives Plaintiffs of the right to operate the restaurant and the customer goodwill accrued at the Covington Location. *See* ECF No. 2 at PageID.309–12. Defendants respond by arguing that the Covington Location was sold on August 5, 2026, rendering any harm from that sale compensable by money damages. *See* ECF No. 15 at PageID.1270–75. Defendants also argue that there is no irreparable harm following the sale to Tommy's Pizza, because the true status quo to which any injunctive relief would return the Parties is necessarily post-sale. *See id.*

"To be granted an injunction, the plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of

---

de-identify the Covington Location, given the TRO's requirement that no Franchised Assets be removed, sold, or otherwise disposed of. *See* ECF No. 8 at PageID.767. Essentially, Defendants argue, they were *required* to leave Fat Boy's trademarks intact at the Covington Location. To be clear, this Court does not fault Defendants for not de-identifying the Covington Location. Rather, as before, this Court bases its Lanham Act analysis on the use of the Fat Boy's Pizza trademark on the announcement that Tommy's Pizza would be opening soon. *See id.* at PageID.763.

such injury." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002) (internal quotation marks and citation omitted). A moving party suffers irreparable harm if the harm "is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

The Sixth Circuit has noted that "[t]he loss of customer goodwill often amounts to irreparable injury." *Basicomputer*, 973 F.2d at 512; *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). This is particularly true for franchise relationships, for the "inability to preserve the goodwill already accumulated at the [franchisee's] location would result in irreparable harm to" the franchisor. *Dunkin' Donuts Inc. v. Taseski*, 47 F. Supp. 2d 867, 878 (E.D. Mich. 1999).

Here, the same threat of irreparable harm that existed on August 13, 2026—when the Court issued the TRO—exists today: Plaintiffs are at risk of losing all customer goodwill at Covington Location to competitor Tommy's Pizza. Indeed, customers were actively diverted from Fat Boy's Pizza to Tommy's Pizza because Defendants did not comply with the TRO's mandate to cease using the Covington Location's phone number. When a customer that tried to reach the Covington Location was instead solicited to eat at Tommy's Pizza, this clearly caused

irreparable harm. *See Dunkin' Donuts*, 47 F. Supp. 2d at 878. Moreover, as Plaintiffs argued at the evidentiary hearing, each time a Fat Boy's Pizza or Savvy Sliders location closes, customers are left to wonder whether the brands are stable. This sort of reputational harm is plainly irreparable. *See ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503–04 (6th Cir. 2022) ("[I]nterference with customer relationships and damage to reputation are precisely the sorts of injuries this circuit has said are difficult to quantify monetarily, and thus constitute irreparable harm.").

In response, Defendants argue that this assertion of irreparable harm is "disingenuous," given that Plaintiffs declined to purchase the Covington Location when given the chance in 2025. *See* ECF No. 15 at PageID.1273–74. But Defendants do not grapple with the fact that Franchisor Plaintiffs expressly asserted their right to assume the Covington Location's lease, purchase its assets, and operate the restaurant on August 7, 2026, evidencing an intent to preserve the business and reenter the market at the Covington Location. *See* ECF No. 1-6. Therefore, the threat of irreparable harm is valid.

Relatedly, Defendants argue that the existing status quo—post-sale to Tommy's Pizza—is the true status quo that must be maintained. *See* ECF No. 15 at PageID.1269–70. Although preliminary injunctive relief is generally used "to preserve the status quo so that a reasoned resolution of a dispute may be had," *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996), there

is no "particular magic in the phrase 'status quo,'" *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Rather, the status quo for purposes of injunctive relief is "the last actual, peaceable, noncontested status which preceded the pending controversy." *Sunbeam Corp. v. Econ. Distrib. Co.*, 131 F. Supp. 791, 793 (E.D. Mich. 1955). And "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *United Food & Comm. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg*, 573 F.2d at 925). It follows that "where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined[,] the court may by mandatory injunction restore" the parties to the previous, uncontested status quo. *Porter v. Lee*, 328 U.S. 246, 251 (1946).

In this case, it was the early-August sale that fundamentally altered the Parties' relationship and the status quo, not this Court's TRO. By August 7, 2026, Plaintiffs had terminated the Covington Franchise Agreements and exercised their right to buy back and operate the Covington Location. *See* ECF No. 1-6. Despite that notice, Corchiani and FBP Covington went ahead and completed the unauthorized sale of the Covington Location to Tommy's Pizza. *See* ECF No. 14-5 at PageID.1236; *see also* ECF No. 14-4 at PageID.1228. It is not entirely clear when the sale was completed, but this Court finds Corchiani's testimony that it was

completed by August 5, 2026, not credible, particularly when considered alongside the documents signed as late as August 10, 2026. Rather, it appears that Corchiani sought to expedite the sale in an attempt to insulate himself and FBP Covington from this litigation and the Covington Franchise Agreements' post-termination obligations.

Fundamentally, the fact that Corchiani sold the business—without authorization—does not somehow transform Plaintiffs' damages into only monetary damages. To the contrary, it was this sale that Plaintiffs sought to enjoin. But the sale was completed, and as of today, the "status quo" is actively harming Plaintiffs—meaning injunctive relief to restore the previous, peaceable status quo is appropriate.[7] *See United Food & Comm. Workers Union*, 163 F.3d at 348; *see also Sunbeam Corp.*, 131 F. Supp. at 793.

[7] To the extent Defendants argue the injunction would be an improper mandatory injunction, *see* ECF No. 14 at PageID.904, the same logic applies. The Sixth Circuit has explained that "the distinction between mandatory and prohibitory injunctive relief is not meaningful." *United Food & Comm. Workers Union*, 163 F.3d at 348. Further, multiple circuits have recognized that "it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions," even though "such an injunction restores, rather than disturbs, the status quo *ante.*" *Oruganti v. Noem*, No. 2:25-cv-00409, 2025 WL 1144560, at *2 n.2 (S.D. Ohio Apr. 18, 2025) (collecting cases). The injunctive relief Plaintiffs seek is a restoration of the status quo before this dispute began; that it requires pausing Defendants' harried sale is of no moment.

At bottom, this Court finds that Plaintiffs continue to suffer irreparable harm from FBP Covington's sale of the Covington Location to Tommy's Pizza.[8]

*2. Substantial Harm to Others*

Next, this Court must consider whether injunctive relief would cause substantial harm to others. Defendants argue that a preliminary injunction would cause both them and Tommy's Pizza substantial harm, and that Michigan law recognizes rescission may be an inequitable remedy. *See* ECF No. 15 at PageID.1276–77. Plaintiffs respond, and this Court finds, that Defendants invited any such harm. *See* ECF No. 21 at PageID.1332–33.

Whether injunctive relief would cause substantial harm to others is a factual inquiry. *Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 426 (6th Cir. 2006). "Others" includes "defendants." *Id*. However, as this Court noted in issuing the TRO, Corchiani and FBP Covington invited this harm by breaching the Covington Franchise Agreements in the first place. *See, e.g.*, *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 952 (E.D. Mich. 2008) (finding that the defendant "brought this harm upon herself" by breaking noncompete agreement, and "willfully incurred the risk

[8] In the *ex parte* TRO, this Court found irreparable harm based on the ongoing trademark infringement. ECF No. 8 at PageID.763. As of August 18, 2026, the offending letter has been removed from the Covington Location's door, *see* ECF No. 14-1 at PageID.927, and no trademark infringement appears ongoing. In turn, there is no longer any threat of or ongoing irreparable harm under the Lanham Act.

that [the p]laintiff might enforce the terms of" the agreement). Although this Court recognizes that Tommy's Pizza may be harmed by this Court's order that Defendants rescind the sale, this Court notes that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945). It appears that is precisely what happened here: Defendants sought to get ahead of any injunctive relief by completing the sale. This diminishes Defendants' claims of harm to themselves or third parties.

*3. Public Interest*

Finally, this Court must consider the public interest. The Parties argue that the "[e]nforcement of contractual duties is in the public interest." *Certified Restoration*, 511 F.3d at 551. *See* ECF Nos. 2 at PageID.321; 15 at PageID.1277–78. Plaintiffs seek to enforce the Covington Franchise Agreements, while Defendants seek to enforce the sale agreement between FBP Covington and Tommy's Pizza. Both sides seek to enforce a contract, so this factor favors neither side.

At bottom, this Court finds that Plaintiffs have demonstrated a strong likelihood of success, and that irreparable harm is ongoing. The harm to FBP Covington and Tommy's Pizza does not outweigh these factors because it was invited by Corchiani and FBP Covington. Therefore, this Court finds that Plaintiffs are entitled to a preliminary injunction.

**B. Plaintiffs' Motion to Hold Defendants in Contempt**

Plaintiffs seek to hold Defendants in contempt of court for their failure to comply with the TRO. ECF No. 10. In response, Defendants argue they complied in good faith after reviewing the docket on August 17. *See* ECF No. 15 at PageID.1280–81. This Court finds that Defendants did not act reasonably to comply with the Order, so a contempt sanction is warranted.

Under Civil Rule 70(e), this Court may hold in contempt a party that fails to comply with an order. FED. R. CIV. P. 70(e); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1996) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). "A party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly violated a definite and specific order of the court." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (internal quotation marks and citation omitted). This requires evidence that the offending party "violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *N.L.R.B. v. Cincinnati Bronze*, 829 F.2d 585, 591 (6th Cir. 1987) (citation omitted). If the moving party produces adequate evidence, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Elec. Workers Pension Tr.*

*Fund of Loc. Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (emphasis omitted). A good-faith effort to comply with a court order is not a defense to a civil contempt action. *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991); *see also Peppers v. Barry*, 873 F.2d 967, 968–69 (6th Cir. 1989). Of course, impossible actions need not be taken, but the burden of proving impossibility "is difficult to meet." *Glover*, 934 F.2d at 708 (citation omitted). In short, Defendants must show that they "took all reasonable steps within their power to comply with the court's order." *Peppers*, 873 F.2d at 969.

It is undisputed that the TRO was a definite and specific order of this Court, requiring Defendants to perform particular acts and prohibiting them—and parties working with them—from performing other acts. Further, it is undisputed that by the evening of August 13, 2026, all Defendants and their counsel had notice and knowledge of the TRO. *See* ECF No. 9. And there is no dispute that Defendants failed to remove the offending letter from the front door of the Covington Location until August 17, 2026, and permitted Tommy's Pizza to use the Covington Location's phone number until at least September 1, 2026. *See* ECF No. 15 at PageID.1281. Rather than dispute these facts, Defendants argue only that they "acted promptly" and in good faith to comply with the TRO by removing the letter on Fat Boy's letterhead from the Covington Location's door on August 18, 2026. *Id.* at PageID.1280–81. Corchiani also argues that because he sold the Covington

Location, he did not believe he had to act to comply with the TRO. ECF No. 14-4 at PageID.1229.

This Court finds that Corchiani and FBP Covington did not take all reasonable steps to comply with the TRO. *See Peppers*, 873 F.2d at 969. At the outset, the fact that Corchiani sold the Covington Location does not absolve him of compliance with the TRO. Corchiani admits that he was able to contact the buyer, having done so on August 17 with a request to remove the letter bearing a Fat Boy's trademark from the Covington Location's front door. ECF No. 14-4 at PageID.1229. Therefore, the fact of sale alone does not absolve Corchiani from compliance, particularly given the ease with which he was able to contact Tommy's Pizza to inform it that it must remove the offending letter.

To the contrary, the sale of the Covington Location's phone number—and the consequence of allowing Tommy's Pizza to use that phone number—is itself a violation of the TRO, which enjoined Defendants from "[t]ransferring or forwarding the telephone number . . . and permitting any other person to use it other than Plaintiffs." ECF No. 8 at PageID.767. Defendants violated this provision until at least September 1, 2026.

Nor does a delay in carefully reading the TRO reflect taking "all reasonable steps within their power to comply." *See Peppers*, 873 F.2d at 969. The TRO explicitly references the letter posted to the Covington Location's door improperly

bearing the Fat Boy's Pizza trademark. *See* ECF No. 8 at PageID.756, 769 (ordering Defendants to specifically "remove and preserve" the letter no later than "**August 14, 2026 at 5:00 p.m. ET**" (emphasis original)). Although Defendants are now in compliance with this provision of the TRO, it is undisputed that this order was violated on August 15, 16, and 17, 2026.

Sanctions may be imposed retroactively "to compensate the complainant for losses sustained." *Gary's Elec. Serv.*, 340 F.3d at 379 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000). Courts may also impose a daily contempt fine to "coerce[] the defendant into compliance with the court's order." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (citation omitted).

Plaintiffs seek both attorneys' fees incurred in bringing their motion for contempt and a $1,500 daily fine until Defendants comply with the TRO. *See* ECF No. 10 at PageID.845–46. This Court finds that a daily fine is not appropriate at this point, given that Defendants have made attempts to comply by removing the Fat Boy's/Tommy's Pizza letter, and that the order to rescind the sale to Tommy's Pizza should guarantee compliance. *See, e.g.*, *Concerned Pastors for Soc. Action v. Khouri*, 720 F. Supp. 3d 522, 540 (E.D. Mich. 2024) (finding daily contempt fines

"no longer appropriate" after the party came in compliance with the relevant order). However, this Court finds that a contempt sanction is warranted, given Defendants' failure to comply with the TRO until Plaintiffs brought the motion to compel. *See Gascho*, 875 F.3d at 800. Plaintiffs will therefore be awarded the attorneys' fees and expenses incurred in bringing the motion for contempt. *See* FED. R. CIV. P. 70(e).

Plaintiffs have not yet asked for a sum certain of attorneys' fees. The amount of the award must be "reasonable," as measured by the lodestar method. *The Ne. Ohio. Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (citation omitted). Therefore, this Court will permit Plaintiffs to submit a request for reasonable attorneys' fees incurred in seeking enforcement of the TRO.

**C. Defendants' Motion to Vacate**

Defendants move to vacate the TRO on several grounds. *See* ECF No. 14. Given this Court's ruling that a preliminary injunction is appropriate, this Court has considered Defendants' arguments as applied to that injunction.

*1. Jurisdiction*

Defendants begin by arguing that Plaintiffs' jurisdictional allegations are deficient, and diversity jurisdiction is lacking. *See* ECF No. 14 at PageID.911–14. But Plaintiffs' Complaint brings a claim under the Lanham Act, providing this Court

with federal question jurisdiction. *See* ECF No. 1 at PageID.37–38; *see also* 28 U.S.C. § 1331. Diversity jurisdiction is therefore unnecessary, and Defendants' argument here provides no basis to vacate the preliminary injunction.

*2. Louisiana Litigation and Venue*

Next, Defendants argue that because Plaintiffs failed to disclose the Louisiana Litigation in their Complaint or Motion, the existence of the Louisiana Litigation is a material change in circumstance requiring this Court to vacate the preliminary injunction. ECF No. 14 at PageID.914–15. Plaintiffs respond that they did not intend to conceal the Louisiana Litigation because that action is immaterial to the matter before this Court. ECF No. 20 at PageID.1313–16. In reply, Defendants argue that the contract's forum-selection clause is void as contrary to Louisiana public policy, consistent with a recent ruling in the Louisiana Litigation. ECF Nos. 24 at PageID.1343–45; *see also* ECF No. 24-1.

A court may modify or dissolve an injunction if "significant changes in the law or circumstances threaten to convert a previously proper injunction into an instrument of wrong." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (internal quotation marks and citation omitted). However, this sort of "judicial intervention is guarded carefully," and a change in circumstances must be "significant" to warrant modification or dissolution. *Id.*

In the Louisiana Litigation, four of Corchiani's LLCs sued the Franchisor Plaintiffs, alleging breach of contract and violations of the Michigan Franchise Investment Law based on the Franchisor Plaintiffs' alleged withdrawal of consent to the sale of several of Corchiani's restaurants. *See* ECF No. 14-2 at PageID.929–39. This Court finds that the mere existence of this litigation is not a "significant" change in circumstances that warrants dissolution of the TRO. *Cf., e.g.*, *End Prod. Results, LLC v. Dental USA, Inc.*, No. 12-11546, 2014 WL 897363, at *4 (E.D. Mich. Mar. 16, 2014) (in trademark dispute, finding issuance of trademark registration insufficient to modify preliminary injunction given ongoing dispute over validity of the newly-registered trademark).

Defendants' initial argument on this point is not well-developed. Defendants simply state that the Louisiana Litigation "materially affects the proceedings before this Court and will affect the ability to give effect to the relief requested by the [Plaintiffs]," without explanation as to *why* that is so. ECF No. 14 at PageID.915. But the fact that the Parties have had previous disputes and may be embroiled in other litigation does not undercut the ongoing irreparable harm Plaintiffs stand to suffer today. Nor does it appear the two cases overlap. Indeed, the Louisiana Litigation raises claims for damages relating to past conduct, and given that it was

filed in April 2026, it does not appear to address *Defendants'* alleged conduct in August 2026.[9]

Turning specifically to the forum-selection clause and related arguments, Defendants argue that Plaintiffs brought this action in an improper venue based on the Covington Franchise Agreements' forum-selection clause. ECF No. 14 at PageID.920. Plaintiffs respond that the plain text of the forum-selection clause in the Covington Franchise Agreements belies that position. ECF No. 20 at PageID.1311–13. In reply, Defendants argue that the forum-selection clause is void because it is contrary to Louisiana public policy, as the Louisiana court recently found. ECF No. 24 at PageID.1343–45; *see also* ECF No. 24-1.

The Parties agree that the Covington Franchise Agreements are valid and binding, and they agree that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (internal quotation marks and citation omitted). That clause provides that "any action brought by

---

[9] Though Defendants did not invoke the first-to-file rule, Plaintiffs argue that rule does not apply here. *See* ECF No. 20 at PageID.1315. That rule provides that in the case of overlapping cases filed "in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration*, 511 F.3d at 551 (internal quotation marks, citation, and emphasis omitted). However, the rule applies only when the two cases are filed in "federal courts of equal rank." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (citation omitted). It does not apply where, as here, one lawsuit was filed in state court. *See, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004).

Franchisor against Franchisee . . . may be brought, in the federal district court covering the location at which Franchisor has its principal place of business at the time the action is commenced." ECF No. 1-1 at § 16.4, PageID.108.

The Parties diverge, however, on their reading of the Franchisor Plaintiffs' "principal place of business." Defendants rely on the Covington Franchise Agreement's recital that the "Franchisor's principal place of business is *currently* Metairie, Louisiana." ECF No. 1-1 at § 16.4, PageID.108 (emphasis added). Although that language was true in 2024 when the Agreement was executed, it does not fix venue in Louisiana indefinitely, as made clear by the use of the word "currently." *See id.* At the time this litigation was commenced, Franchisor Plaintiffs' principal places of business were Farmington Hills, Michigan, *see* ECF No. 1 at PageID.5, which is within this judicial district. Indeed, it appears Corchiani is aware of this, having visited the Franchisor Plaintiffs at their headquarters at least once. *See* ECF No. 38 at PageID.1632. Venue is therefore proper.

As to Defendants' argument that the Covington Franchise Agreements' forum-selection clause is contrary to Louisiana public policy and therefore void, this was presented for the first time in Defendants' reply brief. *Compare* ECF No. 14 *with* ECF No. 24. Generally, an issue raised for the first time in a reply brief is waived. *See, e.g.*, *United States v. Lopez-Medina*, 461 F.3d 724, 743 n.4 (6th Cir. 2006). Moreover, Defendants do not develop this argument in reply, instead relying

on a contemporaneously filed motion to dismiss. *See* ECF No. 25. Because the argument was not raised in Defendants' initial motion to vacate, and because it will be thoroughly briefed in Defendants' motion to dismiss, this Court will not address it at this time.[10] *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (noting that the parties "frame the issues for decision," and the court need only decide "matters the parties present" (citation omitted)).

Accordingly, this Court preliminarily finds that the forum-selection clause is valid as written, and in turn, neither the forum-selection clause nor the Louisiana Litigation provide a basis for vacating the preliminary injunction.

*3. Compliance with Civil Rule 65*

Next, Defendants argue that Plaintiffs failed to comply with Civil Rule 65 "by failing to adequately explain why notice was futile" and arguing that notice could not have caused further harm because the sale to Tommy's Pizza was already completed. ECF No. 14 at PageID.915–17. Plaintiffs respond that these facts underscore, rather than undercut, the need for an *ex parte* TRO. ECF No. 20 at PageID.1307–10.

An *ex parte* TRO is proper where the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse

[10] For the same reason, this Court will not yet address Defendants' oral request to stay this litigation, whether based on the *Colorado River* doctrine or another principle of law.

party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). For example, if "providing notice to the opposing party would cause irreparable harm because the notice might stimulate the very actions the restraining order is intended to prevent," an *ex parte* TRO is proper. *U.S. S.E.C. v. Bravata*, No. 09-12950, 2009 WL 2245649, at *2 (E.D. Mich. July 27, 2009).

*Bravata* is directly on point. There, the plaintiffs sought an *ex parte* TRO against defendants that were allegedly making fraudulent investments with elderly investors' funds. *Bravata*, 2009 WL 2245649, at *1. Notice, the plaintiffs argued, would allow time for the defendants to carry out a new fraudulent scheme, part of which would dissipate funds and place them "beyond the reach of a future disgorgement order." *Id.* at *2. Therefore, the court found, an *ex parte* TRO was appropriate. *Id.*

So too here. As this Court explained in the TRO, notice to Defendants was likely to "accelerate irreparable injury to Plaintiffs through sale of assets or restaurant turnover." ECF No. 8 at PageID.764. Defendants' own evidence demonstrates an intent to quickly sell the Covington Location without Plaintiffs' consent, in violation of the Covington Franchise Agreements. Despite being served with notice that Plaintiffs were terminating the Covington Franchise Agreements on August 7, 2026, *see* ECF No. 1-6, FBP Covington and Corchiani sold the Covington Location, "effective as of" that date, ECF No. 14-5 at PageID.1234–43. Then on

August 8, 2026, Asker reiterated to Corchiani that he "cannot sell Covington [under the] franchise agreements," and threatened litigation. *Id.* at PageID.1260. Yet several days later, the lease assignments related to that sale were executed. *Id.* at PageID.1254–55. It is clear that Corchiani and FBP Covington knew the sale would be the subject of litigation, yet they continued anyway. Notice would have provided FBP Covington and Corchiani *more* time to execute the sale—meaning more time to take "the very actions" that the TRO was entered to prevent. *See Bravata*, 2009 WL 2245649, at *1–2. This Court therefore finds that issuance of an *ex parte* TRO was proper under Civil Rule 65. *See* FED. R. CIV. P. 65.

In sum, this Court finds that the balance of factors favors issuance of a preliminary injunction, that Defendants will be held in contempt for failing to not take all reasonable steps to comply with this Court's TRO, and that the TRO need not and will not be vacated.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Preliminary Injunction, ECF No. 2, is **GRANTED**, such that Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them **ARE IMMEDIATELY ENJOINED** from:

1. Opening or operating a competing restaurant at the Covington Location, permitting or assisting any other person to operate one there, or delivering

possession of the premises or granting any right of entry or access to them for that purpose. A competing restaurant is one that sells pizza, sliders, other sandwiches, or chicken wings for dine-in, carry-out, catering, or delivery;

2. Voluntarily assigning, subletting, surrendering, terminating, or modifying the lease for the Covington Location without Plaintiffs' prior written consent;

3. Removing, selling, encumbering, or otherwise disposing of the Franchised Assets at the Covington Location;

4. Transferring or forwarding the telephone number "(985) 348-2182," or permitting any person other than Plaintiffs to use it;

5. Using any FAT BOY'S PIZZA or SAVVY SLIDERS trademark[11] at the terminated Covington Location or otherwise to advertise or promote any restaurant that Plaintiffs have not authorized in writing;

6. Consummating any sale, assignment, sublease, or other transfer of the franchised restaurant at 2565 Metairie Road, Suite 100, Metairie, Louisiana, its lease, or its Franchised Assets other than inventory sold in the ordinary course,

[11] U.S. Trademark Registration Nos. 6,114,259 (FAT BOY'S PIZZA), 6,114,260 (FAT BOY'S PIZZA "SIZE MATTERS" and design), 6,654,870 (MORE TO LOVE), and 5,871,501 (SAVVY SLIDERS), and the trade dress, décor, menu boards, uniforms, packaging, and signage used at Fat Boy's Pizza and Savvy Sliders restaurants.

without first giving Plaintiffs the written offer notice and right of first refusal pursuant to Section 13.2 of the Franchise Agreement;

7. Consummating any such transfer of the franchised restaurant at 1535 Lapalco Boulevard, Harvey, Louisiana, its lease, or its Franchised Assets, without first giving Plaintiffs the written offer notice and right of first refusal pursuant to Section 13.2 of the Franchise Agreement; and

8. Consummating any such transfer of the franchised restaurant at 3624 Nicholson Drive, Building 500, Unit 2, Baton Rouge, Louisiana, its lease, or its Franchised Assets, without first giving Plaintiffs the written offer notice and right of first refusal pursuant to Section 13.2 of the Franchise Agreement.

It is further **ORDERED**, to restore the status quo and to enforce Defendants' post-termination obligations under Article 15 of the Covington Franchise Agreements, that:

9. Defendants shall not deliver, execute, or perform any further act in furtherance of the sale of the Covington Location. Defendants are therefore enjoined from executing the Agreement of Business Asset Purchase and Sale or the Assignment and Assumption of Lease, Consent and Estoppel Agreement, ECF No. 14-5 at PageID.1234–58, including any delivery of Franchised Assets, records, permits, telephone numbers, keys, or access credentials; any "further

assurances" under paragraph 9 of the assignment; and any consent to a sublease or further assignment of the lease for the Covington Location;

10. Within three (3) business days of the date of this Order, FBP Covington and Corchiani shall deliver to Tommy's Pizza Covington 26, LLC, and The Shops of 21, LLC, and their counsel, by certified mail, a communication which shall:

(a) enclose this Order;

(b) state that the transfer of the Covington Location, its lease, and the Franchised Assets was made without the Franchisor's consent and is of no effect under Section 13.1 of the Franchise Agreements, and that Plaintiffs hold a perfected security interest in the Franchised Assets and their proceeds;

(c) tender rescission of the purchase agreement and return of the purchase price against redelivery of the Franchised Assets and the leasehold;

(d) demand return of the Franchised Assets and reassignment of the lease to FBP Covington or, at Plaintiffs' election, directly to Fat Boy's Pizza Franchise, LLC under Section 15.2 of the Franchise Agreements; and

(e) request the landlord's consent to assignment of the lease to Fat Boy's Pizza Franchise, LLC under Section 15.2.

11. Defendants shall cooperate fully and use their best efforts, as §§ 15.2 and 15.3 of the Franchise Agreements require, ECF No. 1-1 at PageID.105–06, to obtain the landlord's approval of the assignment of the lease for the Covington

Location to Fat Boy's Pizza Franchise, LLC, and shall execute, within two (2) business days of presentation, any assignment, sublease, retraction, or consent reasonably required for that purpose. If FBP Covington fails to execute any such document within the time allowed, Plaintiffs may apply under Civil Rule 70(a) for the act to be done by a person appointed by the Court at FBP Covington's expense;

12. Within five (5) business days of the date of this Order, Defendants shall deliver to Plaintiffs, at the Covington Location or at such other place in St. Tammany Parish, Louisiana, as Plaintiffs designate in writing, all Franchised Assets, and all items identified in § 15.1(c) of the Covington Franchise Agreement, ECF No. 1-1 at PageID.104, that are in the possession, custody, or control of any Defendant or of any of their officers, employees, or agents, and shall not remove any Franchised Asset from the Covington Location;

13. Within five (5) business days of the date of this Order, FBP Covington and Corchiani shall file and serve:

(a) a verified inventory of all Franchised Assets located at the Covington Location as of August 5, 2026, including each item listed on Exhibit "A" to the purchase agreement, ECF No. 14-5 at PageID.1243, identifying each item's present location and custodian and, for any item removed, sold, transferred, or discarded on or after August 6, 2026, the date, the recipient, and the consideration received; and

(b) a verified accounting of all consideration received or receivable under the purchase agreement and the assignment, identifying the date, amount, and payor of each payment and the account into which it was deposited;

14. Within seven (7) days of the date of this Order, FBP Covington; Corchiani Investments, Inc.; and Corchiani shall deposit into the registry of this Court, pursuant to Civil Rule 67(a), the sum of $250,000, as identifiable proceeds of Plaintiffs' collateral under § 4.17 of the Covington Franchise Agreements and La. Stat. Ann. § 10:9-315(a), pending further order. Until the deposit is made, Defendants shall not transfer, withdraw, encumber, or dissipate, to the extent of that consideration, the account or accounts into which that consideration was deposited;

15. Within five (5) days of the date of this Order, FBP Covington and Corchiani shall execute and deliver to the applicable service provider every document necessary to assign and port the telephone number (985) 348-2182 to Fat Boy's Pizza Franchise, LLC in accordance with Section 15.1(e) and Appendix E of the Covington Franchise Agreement, ECF No. 1-1 at PageID.104–05, 127–28;

16. On forty-eight (48) hours' written notice to Defendants' counsel, Defendants shall afford Plaintiffs' representatives access to the Covington Location during ordinary business hours to inspect, photograph, and inventory the Franchised Assets and to remove Plaintiffs' exterior and interior signage, menu boards, and

other trade dress, and shall take all steps within their power, including written direction to the assignee and to the landlord, to secure that access;

17. Within ten (10) days of the date of this Order, Defendants shall file a report, sworn to by Corchiani, describing each act taken to comply with ¶¶ 9–16, each communication with the transferee or the landlord, and each response received, and identifying by name every person who removed any Franchised Asset from the Covington Location on or after August 6, 2026;

18. Plaintiffs shall serve this Order on Tommy's Pizza Covington 26, LLC, and The Shops of 21, LLC, and shall file proof of service within three (3) business days;

19. No security or bond shall be required under Civil Rule 65(c); and

20. This Court retains jurisdiction to construe, modify, and enforce this Order, including through the show-cause proceedings pending under ECF No. 11.

It is further **ORDERED** that Plaintiffs' Motion for Contempt, ECF No. 10, is **GRANTED**. Plaintiffs are directed to file a petition for attorneys' fees by October 7, 2026.

It is further **ORDERED** that Defendants' Motion to Vacate the TRO, ECF No. 14, is **DENIED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 16, 2026